Billy Lewis GLOVER, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 05–88–01432–CR.

Court of Appeals of Texas,
Dallas.

March 22, 1990.

John H. Hagler, Dallas, for appellant.

Pamela Sullivan Berdanier, Dallas, for appellee.

Before WHITHAM, ROWE and BAKER, JJ.

OPINION

BAKER, Justice.

A jury convicted Billy Lewis Glover, Jr. of aggravated sexual assault, assessed a life sentence, and levied a $10,000 fine. He appeals, contending that: (1) the in-court identification by the complaining witness constituted a denial of due process because of alleged suggestive pretrial identification procedures; (2) the trial court reversibly erred in permitting the introduction of "DNA fingerprint" testimony; (3) the trial court erred in failing to grant a mistrial because an unknown individual communicated with a juror during trial and told the juror to assess a life sentence; and (4) the evidence is insufficient to support the conviction. We find no merit in any of these points and affirm the trial court's judgment.

In his second point of error, appellant contends that the pretrial identification procedures were suggestive and that the complaining witness's in-court identification of him as the assailant was tainted, and therefore, he was denied due process of law. See Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969). The general rule is that each case must be considered on its own facts. Convictions based on eyewitness identification at trial following a pretrial photographic identification will be set aside only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of an irreparable misidentification. See Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968); Turner v. State, 614 S.W.2d 144, 146 (Tex.Crim.App.1981). In order to sustain a challenge to the in-court identification, a defendant must show by clear and convincing evidence that the in-court identification was tainted by improper pretrial identification procedures. Jackson v. State, 628 S.W.2d 446, 448 (Tex.Crim.App. 1982). Appellant filed a pretrial motion to suppress the complaining witness's in-court identification testimony. The court held a hearing outside of the jury's presence.

The record of this hearing reflects that the offense was committed on October 2, 1987. The complaining witness testified that the assailant entered her home and sexually assaulted her. The attack lasted for a period of between thirty minutes to one hour in a brightly lit room. She had many opportunities to study his face. She described the assailant to the police immediately after the assault. On October 7, 1987, the complaining witness was shown a photographic lineup consisting of six photo-

graphs. The complainant selected appellant's photograph as being that of her assailant. On that occasion, she told the officer that at the time of the assault, appellant had a mustache and the photograph did not. A second photographic lineup was held on October 9, 1987. The complainant again selected appellant's photograph as that of her assailant. In this photograph, appellant had a mustache. A live lineup was conducted on October 13, 1987. Six individuals were in this lineup, and each one stepped forward and said: "Scream and you will die." The complainant again selected appellant as her assailant.

Appellant complains that the first photographic array was suggestive because appellant was the only person with significantly curly hair. He further complains that a review of the photographs in both arrays reveal that they are not similar but are dissimilar and highly suggestive in nature. He also contends that the appellant was the tallest person to appear in the live lineup. Finally, he asserts that although appellant was missing four teeth, the complainant testified she did not notice anything unusual about his facial features or teeth.

The record contains the photographs used by the State in both arrays together with a group picture of the live lineup and separate pictures of each of the individuals who appeared in the live lineup. We have reviewed all the photographs. In the first array, all of the photographs depict white males appearing to be substantially in the same age group, none of whom had a mustache. Appellant's photograph is not substantially dissimilar, nor are these photographs suggestive in and of themselves. The second group of photographs exhibited to the complaining witness again consist of white males in roughly the same age group with about the same size and coloring, all of whom had a mustache. Again, appellant's photograph is not substantially dissimilar, nor is there anything in the record to render these photographs suggestive in and of themselves. Finally, the photographs taken of the individuals involved in the live lineup do not reflect that appellant's height is so much greater than the other five individuals to render that alleged characteristic suggestive. The complainant testified that the officer that conducted all three lineups never in any way suggested to her which photograph or individual was her assailant. *Compare Bell v. State*, 724 S.W.2d 780, 798–99 (Tex.Crim.App.1986), *cert. denied*, 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987). Based on the record in this case, we conclude that none of the lineups were unnecessarily suggestive.

Even if the identification procedures were unnecessarily suggestive, the admission of the identification testimony does not violate due process so long as the identification possesses sufficient aspects of reliability. *Jackson v. State*, 657 S.W.2d 123, 130 (Tex.Crim.App.1983). Various factors are to be considered in determining the reliability of the in-court identification, including: (1) the prior opportunity to observe the alleged criminal act; (2) the existence of any discrepancy between any prelineup description and the defendant's actual description; (3) any identification prior to lineup of another person; (4) the identification by a picture of the defendant prior to lineup; (5) failure to identify the defendant on a prior occasion; and (6) the lapse of time between the offense and the lineup identification. *Thompson v. State*, 480 S.W.2d 624, 627 (Tex.Crim.App.1972).

At trial, the complainant testified that she had the opportunity to closely observe her assailant for between one-half to one hour. She was able to see him clearly and stated he was white, approximately six feet tall, medium build, had curly hair, a mustache, and wore a dark sleeveless T-shirt and blue jeans. She testified that she and appellant were face to face during much of the offense. She had the time and opportunity to look at his face closely. Immediately after the attack, the complainant described her assailant to the police as being approximately six feet tall, muscular build, brown hair, full mustache, and a neat and nice looking man. There is no material discrepancy between the prelineup description and appellant's actual description. Appellant argues that he was missing four

teeth and that on no occasion did the complaining witness testify that she noticed this feature. The record reflects that the complainant did testify that she did not notice anything unusual about appellant's teeth because he never showed his teeth or smiled and that he talked with his mouth closed.

The record reflects the complainant did not identify any other person prior to the lineup, nor was she shown any pictures of the defendant prior to any lineup, nor did she fail to identify him on any of the prior occasions when asked to do so. The elapsed time between the date of the offense and the three lineups was eleven days. The complainant's in-court identification was clear, positive, and unwavering and was based upon her memory of the offense. In our view, the in-court identification possessed sufficient aspects of reliability. *See Jackson,* 657 S.W.2d at 130. Because we conclude that the pretrial identification procedures were not unduly suggestive and that the in-court identification testimony was reliable, we overrule appellant's second point of error.

■ In his third point of error, appellant contends that the admission of the "DNA fingerprint" testimony into evidence constituted reversible error. Prior to trial, appellant filed a motion to suppress the evidence and testimony regarding DNA testing and the results of such testing. During the trial, a hearing was held outside the presence of the jury regarding the admissibility of the "DNA fingerprint" testimony. This evidence showed that the DNA in appellant's blood and the DNA recovered from the attacker's semen matched and that the chances that the attacker's DNA matched a person other than appellant was one in eighteen billion. The court denied the motion, and the evidence was introduced before the jury.

Appellant urges this Court to adopt the test set out in *Frye v. United States,* 293 F. 1013 (D.C.Cir.1923), and hold that DNA testing has not gained general acceptance in the scientific community, and therefore, such evidence should have been suppressed. In *Frye,* the court stated:

Just when a scientific principle or discovery crosses the line between the experimental and demonstrable stages is difficult to define. Somewhere in this twilight zone the evidential force of the principle must be recognized, and while courts will go a long way in admitting expert testimony deduced from a well-recognized scientific principle or discovery, the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs.

*Frye,* 293 F. at 1014.

Our Court of Criminal Appeals has never specifically adopted the *Frye* test. However, prior decisions of that court reflect that when an occasion has arisen to consider the admissibility of novel scientific evidence, the court has applied a test similar to a generally accepted in the scientific community standard. *See Cain v. State,* 549 S.W.2d 707, 712 (Tex.Crim.App.), *cert. denied,* 434 U.S. 845, 98 S.Ct. 149, 54 L.Ed.2d 111 (1977); *Romero v. State,* 493 S.W.2d 206, 210–11 (Tex.Crim.App.1973); *McKay v. State,* 155 Tex.Crim. 416, 235 S.W.2d 173, 174 (1950); *but cf. Jones v. State,* 716 S.W.2d 142, 154 (Tex.App.—Austin 1986, pet. ref'd). We will apply the *Frye* test.

This appears to be a case of first impression in Texas. When this same issue has arisen in other jurisdictions, the process known as "DNA fingerprint" testing has been found to hold and enjoy a general acceptance in the scientific community in the particular fields in which it belongs. *See Andrews v. State,* 533 So.2d 841, 851 (Fla.Dist.Ct.App.1988), *review denied,* 542 So.2d 1332 (Fla.1989); *Cobey v. State,* 80 Md.App. 31, 559 A.2d 391, 398 (Md.Ct.Spec. App.1989); *State v. Schwartz,* 447 N.W.2d 422, 426 (Minn.1989); *People v. Shi Fu Huang,* 145 Misc.2d 513, 546 N.Y.S.2d 920, 922 (Co.Ct.1989); *People v. Wesley,* 140 Misc.2d 306, 533 N.Y.S.2d 643, 659 (Co.Ct. 1988); *People v. Castro,* 144 Misc.2d 956, 545 N.Y.S.2d 985, 995 (Sup.Ct.1989); *Spencer v. Commonwealth,* 238 Va. 275,

384 S.E.2d 775, 783 (1989).[1] The State's expert witnesses testified that the DNA fingerprint identification process holds and enjoys a general acceptance in the scientific community in the particular fields in which it belongs. Appellant did not produce any expert testimony challenging the principles, procedures and technology of the test generally, nor did appellant produce any expert testimony challenging the particular test done in this case. *See Cobey,* 559 A.2d at 398. Based upon the record before us, we conclude that "DNA fingerprinting"—its underlying principles, procedures and technology—is a scientific test that is reliable and has gained general acceptance in the scientific community in the particular fields in which it belongs. *See Frye,* 293 F. at 1014. We hold that the trial court did not abuse its discretion in overruling appellant's motion to suppress the evidence and admitting it before the jury. We overrule appellant's point of error number three.

█ In his fourth point of error, appellant contends that the trial court erred in failing to grant a mistrial when it was revealed that an unknown party communicated with a juror during the trial. After both sides had closed during the punishment stage, the trial was recessed to the following day. The next morning, one of the jurors reported to the court that an unknown person had telephoned her the prior evening and said: "Give Billy Glover life and I will call the rest of the jurors tonight." The trial court conducted a hearing and the juror testified regarding this conversation. The trial court ascertained that none of the other jurors had been contacted by anyone about the case. Appellant's motion for a mistrial was denied.

█ Article 36.22 of the Texas Code of Criminal Procedure provides in part:

> No person shall be permitted to converse with a juror about the case on trial except in the presence and by permission of the court.

TEX.CODE CRIM.PROC.ANN. art. 36.22 (Vernon 1981). The purpose of the article is to prevent an unauthorized outsider from saying anything that might influence a juror. *See Chambliss v. State,* 647 S.W.2d 257, 265–66 (Tex.Crim.App.1983). It is generally presumed that a defendant is injured whenever a juror converses with an unauthorized person about a case. *See Romo v. State,* 631 S.W.2d 504, 506 (Tex.Crim.App. 1982). This presumption is rebuttable, and a new trial is not required unless there has been injury to an accused. *See Thomas v. State,* 699 S.W.2d 845, 853 (Tex.Crim.App. 1985). The defendant bears the burden of establishing prejudice. *Starvaggi v. State,* 593 S.W.2d 323, 327 (Tex.Crim.App.1979).

During the hearing held on this issue, the juror testified that a man called her and told her to give Billy Glover life and that he would call the rest of the jurors that night. When the juror asked the caller's identity, the caller hung up. This juror testified that she was shocked by the call. The trial court then admonished the juror that she had to render her decision on punishment based solely on the law and the evidence. The juror testified that she could decide punishment solely on the law and the evidence and would not be influenced by the call. She further testified she would do whatever she thought was right on the punishment issue regardless of the call which would not influence her in any way whatsoever. As previously indicated, the trial court had already ascertained that none of the other jurors had been contacted by anyone concerning the case. The court further admonished the juror not to talk about the call with any of the other jurors. In our view, this evidence rebutted the presumption of prejudice, and the trial court did not abuse its discretion in denying appellant's motion for mistrial. *See Thomas,* 699 S.W.2d at 853–54; *McMahon v. State,* 582 S.W.2d 786, 793 (Tex.Crim.App. 1978), *cert. denied,* 444 U.S. 919, 100 S.Ct.

---

1. As it would unduly lengthen this opinion, we have omitted a detailed analysis of the theory underlying DNA identification, and DNA forensic identification techniques and experiments. For an in-depth review of the theory, its techniques and experiments, the reader is directed to the opinion of Justice Gerald Sheindlin in *People v. Castro,* 144 Misc.2d 956, 545 N.Y.S.2d 985 (Sup.Ct.1989).

238, 62 L.Ed.2d 175 (1979). We overrule appellant's fourth point of error.

■ Finally, in his first point of error, appellant contends that there is insufficient evidence to support the conviction. Appellant acknowledges that the standard of review is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Chambers v. State*, 711 S.W.2d 240, 245 (Tex.Crim.App.1986). He further concedes that the jury is the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given their testimony. *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex.Crim.App.1981). However, appellant cites *Carlsen v. State*, 654 S.W.2d 444, 447 (Tex.Crim.App.1983), contending that if the evidence supports an inference other than the guilt of the appellant, a finding of guilt beyond a reasonable doubt is not a rational finding. Appellant's reliance on *Carlsen* is misplaced because that case deals with the additional analysis required in circumstantial evidence cases. This is a direct evidence case. Appellant further contends that in reviewing the evidence the court should not consider the alleged inadmissible in-court identification or the DNA fingerprinting. Although we have determined that that evidence was properly admitted, when reviewing an insufficiency point, the court is to consider all the evidence introduced at trial whether properly admitted or not. *Lockhart v. Nelson*, 488 U.S. 33, 109 S.Ct. 285, 290–91, 102 L.Ed.2d 265 (1988); *Dunn v. State*, 721 S.W.2d 325, 327 (Tex.Crim.App.1986).

■ Aggravated sexual assault is proven when a person intentionally or knowingly has sexual intercourse with another without the other's consent and that person either causes the victim serious bodily injury, by acts or words places the victim in fear of death or serious bodily injury, or by acts or words occurring in the presence of the victim threatens to cause death or serious bodily injury. *See* TEX.PENAL CODE ANN. § 22.021 (Vernon 1989).

We must review the evidence in the light most favorable to the verdict. *Chambers*, 711 S.W.2d at 245. The complainant testified that the appellant entered her home, hit her in the face, threw her on the bed and attempted to sexually assault her. The two struggled for some time until the appellant threatened to hit her in the face with an iron if she did not cooperate. The complainant finally succumbed because she was afraid for her life. She testified that the entire incident took between half an hour to an hour in a well lit room. The complainant saw the appellant's face and said she would never forget it. The complainant gave a description of the attacker to the police on the night of the rape. Later, she was shown two photographic lineups and a live lineup, and on each occasion, she positively identified the appellant as the attacker. At the live lineup, she identified the appellant's voice to that of the attacker. At trial, the complainant made an independent identification of the appellant as the attacker based upon her recollection of the attacker at the time of the offense. A serological analysis established that both appellant's blood and the attacker's semen carried an enzyme which only occurs in thirty-two percent of the population and which was not carried by the complainant. Further, experts established that the DNA in appellant's blood and the DNA recovered from the attacker's semen matched and that the chances that the attacker's DNA matched a person other than appellant was one in eighteen billion. Appellant admitted that he physically assaulted a bar owner only three blocks from the complainant's home on the same night of the assault. When appellant was arrested, he had scratch marks on his body. Complainant testified that she scratched and clawed the attacker. As a result of the attack, complainant suffered a cut under her eye, a broken facial bone, and numerous bruises and contusions. In our view, there is sufficient evidence for any rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt. We overrule appellant's first point of error.

We affirm the trial court's judgment.