969 S.W.2d 95 (1998)
In the Matter of N.M.P.
No. 07-96-0200-CV.
Court of Appeals of Texas, Amarillo.
April 22, 1998.
*97 Jeff Blackburn, Amarillo, for appellant.
Gray County District Attorney's Office, John A. Mann, Tracey L. Jennings, for appellee.
Before DODSON, QUINN and REAVIS, JJ.
DODSON, Justice.
N.M.P. appeals an order from the 223rd District Court of Gray County, sitting as a juvenile court, which waives that court's juvenile jurisdiction and transfers N.M.P. to the 223rd District to be tried as an adult in a capital murder case. The alleged offense occurred in September 1987, when N.M.P. was 16 years old. The challenged transfer order was tendered in May of 1996, when he was 25 years old. By three points of error, N.M.P. contends that the trial court erred in determining that it was not practicable to proceed in juvenile court due to a lack of probable cause before his 18th birthday, that the trial court erred when it found that the State should not be held to a standard of due diligence before his 18th birthday, and that the State's failure to show compliance with Texas Family Code section 53.04 was fundamental error. We affirm the juvenile court's order.
On September 2, 1987, N.M.P.'s adoptive father was found shot to death in his mobile home in Pampa, Texas. When the police arrived at the mobile home, N.M.P. was not present, nor was he at school. The victim's company vehicle was missing, and police suspected N.M.P. of taking it. A warrant was issued for N.M.P. for unauthorized use of a motor vehicle. N.M.P. was arrested the next day with the vehicle in his possession. Upon his arrest, police noticed what appeared to be blood stains on some of N.M.P's clothes. While N.M.P. was detained on the unauthorized use charge, the police obtained and served a search warrant. A shirt, a pair of blue jeans, and a pair of shoes were taken from N.M.P.
All evidence, including a blood sample from the victim, was sent to the Federal Bureau of Investigation in Washington, D.C. The FBI determined that blood found on N.M.P's shoes was human blood. However, due to an insufficient amount of blood on the shoes, they could not determine the blood type. The FBI's report was dated March 7, 1988. N.M.P. was eventually released, and no proceedings were had against him in any court. He turned 18 on October 17, 1988, just over a year after his father's murder.
On January 16, 1996, the same evidence was sent to Lab Corp of America for DNA testing. This test revealed that the blood on N.M.P's shoes was the same as his father's. Based on this new information, N.M.P. was arrested for murder, for the first time. He was 25 years old upon his arrest.
*98 Since the alleged misconduct occurred when the appellant was 16 years old, the proceedings against the appellant are governed by the Family Code in effect at that time. Under the applicable provision of the Family Code, the juvenile court is empowered to transfer proceedings to criminal court in certain circumstances. See Tex. Fam.Code Ann. § 54.02 (Vernon 1987) amended by Acts 1995, 74th Leg., ch. 262, § 34. Absent an abuse of discretion, the findings of the juvenile court in a certification hearing will not be disturbed. In the Matter of D.W.L., 828 S.W.2d 520, 525 (Tex.App. Houston [14th Dist.] 1992, no writ). An appellate court will review the entire record and set aside a juvenile court's decision to waive jurisdiction and transfer a matter only if the court acted without any reference to guiding rules and principles. J.R.W. v. State, 879 S.W.2d 254, 257 (Tex.App.Dallas 1994, no writ).
In regard to the matter before us, the relevant portions of the discretionary transfer statute require the juvenile court to find that:
1) the person is 18 years of age or older;
2) the person was 15 years of age or older and under 17 years of age at the time he is alleged to have committed a felony;
3) no adjudication concerning the alleged offense has been made or no adjudication hearing concerning the offense has been conducted;
4) the juvenile court finds from a preponderance of the evidence that after due diligence of the state it was not practicable to proceed in juvenile court before the 18th birthday of the person because:
(A) the state did not have probable cause to proceed in juvenile court and new evidence has been found since the 18th birthday of the person; ...
(5) the juvenile court determines that there is probable cause to believe that the child before the court committed the offense alleged.
Tex. Fam.Code Ann. § 54.02(j)(amended 1995)(emphasis added).
Here, the juvenile court made findings consistent with these statutory requirements.
In his first point of error, N.M.P. contends that the trial court erred in determining that it was not practicable for the State to proceed in juvenile court before his 18th birthday because the State lacked probable cause at that time.[1] The gist of his complaint is that the State did not prove that DNA testing was not available or practicable from September 1987 through October 1988, when N.M.P. turned 18. Absent such proof, N.M.P. argues, the trial court erred in finding that the State acted with "due diligence" as required by the transfer statute. In essence, under this point of error, the appellant claims the State failed to exercise due diligence by not having DNA testing done between September 1987 and October 1988.
The juvenile court, as part of its waiver of jurisdiction and order transferring the case, found and took notice that prior to October 1988, Texas courts had not determined that DNA testing was generally accepted by the scientific community so as to be a reliable tool in criminal investigation or that it was reliable as evidence in criminal trials. The court also found that while DNA testing was being done in the early 1980's, there was a lag time before it was generally accepted in the scientific community or for judicial use as evidence until after October 17, 1988. In fact, Texas appellate courts did not even begin to consider the admissibility of DNA fingerprint evidence until the early 1990's. The earliest Texas appellate case considering the admissibility of DNA fingerprint analysis is Glover v. State, 787 S.W.2d 544 (Tex. App.Dallas 1990), aff'd 825 S.W.2d 127 (Tex.Cr.App.1992).[2] The Dallas Court of Appeals *99 held such evidence to be admissible, citing a number of cases in other jurisdictions. Significantly, even in those jurisdictions that decided the issue before Texas, only two found such evidence admissible by 1988. See Andrews v. State, 533 So.2d 841, 851 (Fla.Dist.Ct.App.1988), review denied, 542 So.2d 1332 (Fla.1989); People v. Wesley, 140 Misc.2d 306, 533 N.Y.S.2d 643, 659 (Co. Ct.1988). Most of these early cases were decided in 1989 and later. The Texas Court of Criminal Appeals passed on the admissibility of DNA fingerprint tests in Kelly v. State, 824 S.W.2d 568 (Tex.Cr.App.1992). In holding that the admissibility of novel scientific evidence was governed by a relevancy test, the Court affirmed the admission of DNA fingerprint evidence at trial. This was the first definitive indication at the Texas high court level that DNA fingerprint evidence was admissible in criminal proceedings.[3]
The record in this case contains statements by police officers involved in the investigation indicating that they followed the procedures and sought the tests they knew were standard at the time. Terry Cox, the investigator who sent the bloody clothes to the FBI, testified that it was standard procedure in 1987 to send such items to the Bureau for review. The police would make requests of the FBI, who in turn would respond that they could or could not comply. Cox testified that when the FBI informed him that they could not type the blood on the shoes, he believed there were no other tests that could be run. There was some testimony at the hearing indicating that the police were not aware of the existence of DNA testing.
N.M.P. contends that the officer's lack of knowledge of this testing constitutes a lack of due diligence. However, we find no authority, and N.M.P. cites none, holding that the State must search out and use new, unproven scientific theories or tests to meet the due diligence requirement. To the contrary, the law requires the State to show that novel scientific evidence is reliable, and thus probative and relevant. Kelly, 824 S.W.2d at 572. The State would be in an untenable position if it were required to prove that a cutting edge scientific test was reliable when the experts were still developing and refining the technology.
The evidence before the juvenile court, and the case law before us, shows that DNA fingerprint evidence was only just reaching, if at all, the level of reliability required by courts around the country by N.M.P.'s 18th birthday. Clearly, Texas had not affirmatively recognized it by that time. The officers involved in the murder investigation testified that they did not believe they had probable cause to arrest N.M.P. based on the information available to them under their normal procedures in place between September 1987 and October 1988. In light of the State's testimony at the hearing and this legal backdrop, we are not persuaded that the juvenile court acted without reference to any guiding principles and thus abused its discretion when the juvenile court waived its jurisdiction and transferred the matter to district court.
N.M.P. contends that even if the DNA evidence was inadmissible at trial, the State should have sought the test prior to October 1988, as a basis for proving probable cause to proceed in juvenile court prior to N.M.P.'s 18th birthday. N.M.P. cites two cases to support this position. See In the Matter of J.P.O., 904 S.W.2d 695, 700 (Tex. App.Corpus Christi 1995, no writ); In the Matter of D.W.L., 828 S.W.2d at 524. These cases simply recognize that before the juvenile court can certify a child as an adult, there must be a finding of probable cause to believe that the child before the court committed the offense. While probable cause can be found by hearsay or otherwise inadmissible evidence, these cases permit but do not absolutely require the State to invoke inadmissible evidence to prove probable cause. In this instance, the State cannot be faulted for failing to obtain and use inadmissible evidence to attempt to establish probable *100 cause. The challenged evidence was simply inadmissible at the time, and could not be used to establish probable cause.
Probable cause is defined as sufficient facts and circumstances to warrant a prudent person to believe that the suspect had committed or was committing the offense. In the Matter of D.W.L., 828 S.W.2d at 524. The probable cause standard of proof embraces a practical, common sense approach rather than the more technical standards applied in the burdens of proof of either beyond a reasonable doubt, or a preponderance of the evidence. In the Matter of A.A., 929 S.W.2d 649, (Tex.App.San Antonio 1996, no writ). Based on the officers' testimony that they did not believe they had probable cause to arrest N.M.P., that DNA testing was not recognized by them as an acceptable investigation tool, and given the history of Texas case authority regarding the admissibility of such evidence, we conclude that the trial court did not abuse its discretion by finding that it was not practicable to proceed in juvenile court due to a lack of probable cause before N.M.P.'s 18th birthday. Accordingly, we overrule N.M.P.'s first point of error.
By his second point, N.M.P. complains that the trial court erred by finding that the State should not be held to a standard of due diligence before his 18th birthday. This point presents some of the same matters we have addressed under N.M.P.'s first point of error. He asserts that the trial court apparently confused the issue of admissibility of DNA tests with the statutory requirement that the State act with due diligence. To this end, N.M.P. points to the officers' testimony indicating that they had "heard" of DNA testing in 1987, that they did not research scientific literature regarding the nature of DNA testing, and that they did not inquire into the cost of such tests. In this connection, we point out that Texas courts have not defined due diligence as used in section 54.02(j)(4) of the Family Code.
Nevertheless, the term "due diligence" has been used in a number of contexts in both criminal and civil proceedings. In general, due diligence requires that a party cannot simply sit on their rights or duties. Several Texas cases have addressed what is not due diligence. See McClellan v. State, 742 S.W.2d 655, 656 (Tex.Cr.App.1987) (due diligence is not shown where delays are in prosecutor's control); Sessions v. State, 939 S.W.2d 796, 798 (Tex.App.El Paso 1997, no pet.) (due diligence not shown by unexplained delays). However, we have found no authority which requires the State to do everything perceivable and conceivable to avoid delay in order to establish due diligence. Rather, the burden imposed by due diligence is that the State must attempt to move ahead, or be able to reasonably explain delays. In this instance, the record shows that the police followed their normal procedures, sought the standard blood typing test, and when frustrated, they preserved the evidence in the case for later and further consideration. In due course, the evidence was presented for further testing.
To further support his contention that the State did not act with due diligence, N.M.P. relies on State v. Flores, 856 S.W.2d 614, 614-15 (Tex.App.Eastland 1993, pet. ref'd). In Flores, the defendant was charged with capital murder, sexual assault and aggravated robbery of a woman in 1981. The State had obtained a search warrant for a blood sample in 1985, but the sample was not adequately preserved for DNA testing. After the Dallas Court of Appeal's decision in Glover, the State sought a second search warrant for another blood sample so they could have DNA testing done. The trial court suppressed the results because the warrant violated the statutory prohibition on subsequent searches. The Eastland Court of Appeals affirmed the suppression.
Flores is not applicable in this instance. In the case before us, the police tested the same blood samples that they originally collected. There is no issue involving a subsequent search of the same person, place or thing as there was in Flores. In Flores, the problem arose when the State tried to obtain the same evidence from a subsequent search of the same place or person. Thus, we do not find Flores helpful.
To further support his position that the State should use inadmissible evidence to *101 determine probable cause, N.M.P. cites several cases holding that a juvenile court is permitted to receive and consider evidence that would be inadmissible at trial. See In the Matter of E.D.M., 916 S.W.2d 9, 11-12 (Tex.App.Houston [1st Dist] 1995, no writ); In the Matter of J.P.O., 904 S.W.2d at 699; In the Matter of K.B.H., 913 S.W.2d 684, 686-87 (Tex.App.Texarkana 1995, no writ). These cases address the admissibility of hearsay statements in reports required under the Family Code in juvenile proceedings, and are thus distinguishable from the situation presented in this matter. Nevertheless, N.M.P. contends that the State should have pursued DNA testing, regardless of its then possible inadmissibility, since the juvenile court was not limited to considering only admissible evidence for the purpose of determining probable cause. We disagree with this assertion. To satisfy due diligence, the State need only take reasonable action to proceed. The State must not make unreasonable, unexplained delays. Based on the testimony provided by Pampa police officers, that DNA testing was something they had only "heard" of, not something they had used in investigations before, and in light of the fact that law enforcement in Texas was not generally using this technique through October 1988, we conclude that the juvenile court did not abuse its discretion in finding that the State should not be held to a standard requiring the use of DNA testing prior to October 17, 1988.[4] Thus, we overrule N.M.P.'s second point of error.
In his third and final point of error, N.M.P. claims that the State failed to show it had complied with section 53.04 of the Family Code, and that this failure constitutes fundamental error. The 1987 version of section 53.04 requires a petition for adjudication or transfer hearing to be made "as promptly as practicable." Thus, the appellant claims that the State's failure to file a petition in juvenile court in 1987 and give him notice that he was a suspect in a capital murder, violated his due process rights. In essence, he claims that the State's failure to charge him before his 18th birthday is a defect in pleadings which can be construed as a jurisdictional defect, depriving the juvenile court of its power to transfer the case. We disagree.
First, we note that N.M.P. does not complain that the delay is a violation of speedy trial protection. In fact, the right to a speedy trial does not arise until the time that the defendant is formally accused or arrested. United States v. Lovasco, 431 U.S. 783, 788-89, 97 S.Ct. 2044, 2047-48, 52 L.Ed.2d 752 (1977). Instead, N.M.P. complains that the pre-indictment delay in this case violates due process.
Subject to applicable statutes of limitations, the State is not required by due process, or otherwise, to file charges against persons, particularly where the State lacks probable cause. Moreover, there is no statute of limitations on murder in Texas. Tex. Code Crim. Proc. Ann. art. 12.01(1)(Vernon 1977). Since juvenile courts only have jurisdiction over persons who meet the definition of "child" under the Family Code, See Tex. Fam.Code Ann. §§ 51.02(2), 51.04(a)(Vernon 1996), failure to waive jurisdiction would essentially result in dismissal of this matter. N.M.P.'s reading of section 53.04 would, in effect, create a time limit, governed by the phrase "as promptly as practicable," on murders committed by juveniles.
While we agree that this language requires the prosecutor to take action with diligence, we do not agree that the language creates a bar to prosecution or otherwise defeats the juvenile court's jurisdiction to conduct a transfer hearing. The State is entitled to file murder charges at any time, and there is no requirement in the law that a person be notified that he is a suspect, nor that he be served with notice of a charge that does not yet exist.
*102 It is true that juveniles are entitled to the same due process rights as adults in notification of criminal proceedings. Villarreal v. State, 495 S.W.2d 28, 29-30 (Tex. Civ.App.Corpus Christi 1973, no writ), citing Carrillo v. State, 480 S.W.2d 612 (Tex. 1972). Moreover, due process may bar indictment even when the indictment is brought within the statute of limitations period. United States v. Marion, 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971). However, in Marion, the U.S. Supreme Court held that Fifth Amendment Due Process would prohibit indictment where pre-indictment delay caused substantial prejudice to a defendant's right to a fair trial and the delay was an intentional device by the State to gain a tactical advantage over the accused. Id. at 324, 92 S.Ct. at 465.[5]See also United States v. Crouch, 84 F.3d 1497, 1500 (5th Cir.1996) (rehearing en banc), cert. denied, 117 S.Ct. 736, 136 L.Ed.2d 676 (1997) (dismissal for pre-indictment delay requires showing of not only prejudice, but also that the prosecution purposely delayed indictment to gain a tactical advantage or other bad faith purpose). Further, the U.S. Supreme Court has said "... prosecutors are under no duty to file charges as soon as probable cause exists but before they are satisfied they will be able to establish the suspect's guilt beyond a reasonable doubt." United States v. Lovasco, 431 U.S. at 790-91, 97 S.Ct. at 2049, 52 L.Ed.2d 752.
In the case before us, N.M.P. has not alleged any bad faith act on the part of the State. Rather, N.M.P. contends that the State failed to act quickly enough, or stated another way, the State was negligent in prosecuting the case with speed. Furthermore, N.M.P. has not alleged any prejudice on his part by the State's delay. Moreover, the Court of Criminal Appeals addressed the issue of investigative, pre-indictment delay in Spence v. State, 795 S.W.2d 743 (Tex.Cr.App. 1990), cert. denied, 499 U.S. 932, 111 S.Ct. 1339, 113 L.Ed.2d 271 (1991). The Court concluded that as a matter of law, the trial court in that case could not have granted Spence's motion to dismiss the indictment based on pre-indictment delay. "Investigative delay is fundamentally unlike delay undertaken by the government solely to gain tactical advantage over the accused. We therefore hold that to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might be somewhat prejudiced by the lapse of time." Id. at 749-50 (quoting Lovasco 431 U.S. at 795-96, 97 S.Ct. 2044).
In this instance, the police pursued the normal investigative techniques available to them at the time of the murder, and having exhausted those routes, preserved the evidence for further review. Further investigation was stifled until the scientific technology became available to pursue the matter more fully. Once DNA testing became available (and more importantly, legally relevant), the State resumed investigation by having the shoes tested. N.M.P. does not allege intentional delay by the State, nor does he complain that his defense is prejudiced by the delay. Accordingly, we overrule N.M.P.'s third point of error.
In sum, we overrule the appellant's three points of error and affirm the juvenile court's judgment.
NOTES
[1] N.M.P. makes a single statement but does not argue that the evidence that the trial court based its findings on was not "new." It is undisputed that the blood on appellant's shoes was available in 1987. Nevertheless, because of the comparative availability of DNA testing in 1987 as opposed to 1996, the legal effect of that evidence is new.
[2] N.M.P. points out, and we recognize, that the trial in Glover, where the trial court admitted the DNA evidence, was conducted sometime between 1987 and 1988. However, N.M.P. also points out that the admissibility of the DNA evidence is not really the crux of the issue here. Instead, the issue is whether the State acted with due diligence in proceeding against N.M.P. before his 18th birthday. Here, the police could not build probable cause to arrest, in part because they did not have access to reliable methods with which to test the evidence.
[3] Although the issue was first discussed at the intermediate appellate level in Glover, Kelly was decided by the Court of Criminal Appeals before it decided Glover.
[4] N.M.P. argues that the juvenile court held the State to something less than a due diligence standard. We do not agree with N.M.P.'s interpretation of the court's finding. The court found "[t]hat the State, in fundamental fairness, should not be held to a standard of due diligence that would require the use of DNA tests as a crime-solving technique earlier than October 17, 1988." This statement does not apply a lower standard than due diligence. It merely recognizes that due diligence did not require the State to pursue DNA testing by October of 1988.
[5] Texas courts have applied this line of federal cases to our state law requirement for due course of law under the Texas Constitution when addressing pre-indictment delay. See Moore v. State, 943 S.W.2d 127, 129 (Tex.App.Austin 1997, pet. ref'd.).