# 1346-14

ORIGINAL

IN THE
COURT OF CRIMINAL APPEALS
AUSTIN TEXAS

Cause No. PD-1346-14

CARL EDMOND YANCY
Appellant

vs.

THE STATE OF TEXAS
Appellee

RECEIVED IN
COURT OF CRIMINAL APPEALS

DEC 31 2014

Abel Acosta, Clerk

ON APPEAL FROM THE FIRST COURT APPEALS
FROM THE 178th JUDICIAL DISTRICT
IN CAUSE NO. 1239111

FILED IN
COURT OF CRIMINAL APPEALS

DEC 31 2014

Abel Acosta, Clerk

HONORABLE SHERRY RADACK
CHIEF JUSTICE
FIRST COURT OF APPEALS

PETITION FOR DISCRETIONARY REVIEW

Carl Edmond Yancy
TDCJ-CID #1842638
Alfred Stringfellow Unit
1200 F.M. 655
Rosharon, Texas 77583

ORAL ARGUMENT IS WAIVED

## IDENTITY OF JUDGE, PARTIES, AND COUNSEL

**TRIAL JUDGE**

Honorable David Mendoza

178th District Court of Harris County

1201 Franklin St.

Houston, Texas 77002

**TRIAL COUNSEL FOR APPELLANT**

James Brooks

1314 Texas Ave., Suite 1300

Houston, Texas 77002

**TRIAL COUNSEL FOR APPELLEE**

Devon Anderson
**Harris County District Attorney**

1201 Franklin, Suite 600

Houston, Texas 77002

Nathan Hennigan
**Assistance District Attorney**

1201 Franklin, Suite 600

Houston, Texas 77002

**APPELLATE COUNSEL FOR APPELLANT**

Crespin Michael Linton

440 Louisiana, Suite 900

Houston, Texas 77002

**APPELLATE COUNSEL FOR APPELLEE**

Devon Anderson
**Harris County District Attorney**

1201 Franklin, Suite 600

Houston, Texas 77002

Clinton A. Morgan
**Assistant District Attorney**

1201 Franklin, Suite 600

Houston, Texas 77002

## TABLE OF CONTENTS

PAGE #

IDENTITY OF PARTIES.................................................... i

TABLE OF CONTENTS..................................................... ii

INDEX OF AUTHORITIES.................................................. iii

JURISDICTION.......................................................... 1

STATEMENT OF THE CASE................................................. 1

STATEMENT OF PROCEDURAL HISTORY....................................... 1, 2

GROUNDS FOR REVIEW.................................................... 2

GROUND 1 Whether the justices of the First Court of Appeals disagreed on a material question of law, that "the jury made the determination that the complainant's testimony was credible.

GROUND 2 Whether the First Court of Appeals decided an important question of State and Federal Law, by the questionable reference to appellant being in jail.

ARGUMENTS AND AUTHORITIES............................................. 2 - 4

CONCLUSION........................................................... 4, 55

PRAYER............................................................... 5

VERIFICATION......................................................... 5

CERTIFICATE OF SERVICE............................................... 6

ii

STATE CASES                    INDEX OF AUTHORITIES                    PAGE #

Bauder v. State, 921 S.W.2d 696.................................... 4

Brown v. State, 881 S.W.2d 582.................................... 4

Glover v. State, 787 S.W.2d 544.................................... 4

Murray v. State, 24 S.W.3d 881.................................... 4

Roberson v. State, 16 S.W.3d 156.................................... 4


FEDERAL STATUTES


28 U.S.C. § 1746.................................................... 5

Cause No. PD-1346-14

IN THE

COURT OF CRIMINAL APPEALS

AUSTIN TEXAS

---

| | |
|---|---|
| CARL EDMOND YANCY<br>    Appellant | § |
| | § |
| VS. | §    TRIAL COURT No. 1239111 |
| | § |
| THE STATE OF TEXAS<br>    Appellee | § |
| | § |

---

### PETITION FOR DISCRETIONARY REVIEW

TO THE HONORABLE JUDGE(S) OF SAID COURT:

COMES NOW, Carl Edmond Yancy, Appellant pro-se in the above styled and numbered cause, and respectfully files this his Petition For Discretionary Review (PDR). The Appellant would show the Honorable Court the following in support thereof:

### I. JURISDICTION

This Honorable Court has jurisdiction over all the matters and parties of this PDR.

### II. STATEMENT OF THE CASE

A jury found Appellant, Carl Edmond Yancy, guilty of the offense of aggravated sexual assault of a child under fourteen years of age. After finding true the allegation in an enhanced paragraph that he had previously been convicted of a felony, the jury assessed Appellant's punishment at confinement for forty-five (45) years and a fine of ten (10) thousand.

### III. STATEMENT OF PROCEDURAL HISTORY

Appellant was found guilty at trial by jury on February 22, 2013. On

-1-

February 25, 2013, jury assessed punishment of fourty-five (45) years in the Texas Department Of Criminal Justice-Correctional Institutional division, (herein after TDCJ-CID), and a ten (10) thousand dollar fine. Appellant filed his notice of appeal on the same day. The First Court of Appeals affirmed the judgment of the trial court in its opinion issued July 24, 2014. Appellant filed a Motion For Rehearing. The First Court of Appeals denied Appellant's Motion For Rehearing on September 15, 2014.

## IV. GROUNDS FOR REVIEW

**GROUND 1:** Whether the justices of the First Court of Appeals disagreed on a material question of law, that "the jury made the determination that the complainant's testimony was cedible [in deciding that the jury reached a rational decision]" (MO, pg. 10, ¶ 1), necessary to the court's decision.

**GROUND 2:** Whether the First Court of Appeals decided an important question of State and Federal law, by [the objectionable reference to appellant having been "in jail" and the presumption that the jury heeded the trial court's instruction] (MO pg. 19 ¶ 2), should be settled by the Court of Criminal Appeals.

## V. ARGUMENTS AND AUTHORITIES

Appellant contends the First Court of Appeals erred in finding there was sufficient evidence to support the jury returning a guilty verdict. The State presented six (6) witnesses, one of which was the complainant, Natasha Younghlood. Two of the witnesses as expert witnesses testified to the physical evidence found and not found in this case; Zury Phillips, a DNA Analyst; and Terra Kerr, a Sexual Assault Nurse Examiner. The remaining three witnesses for the State, contributed to timeline of events.

The witnesses testimony surrounding complainant as as follows:

1. Kathy Brown noted Natasha did not like to refer to Appellant as her

father, and she further noted some animosity between Natasha and Appellant, (R.R. Vol. 3 at 27) "Brown described Appellant as a strict disciplinarian." (R.R. Vol. 3 at 45) "She testified that in 2009 she became aware that Appellant intended to move to San Antonio, Texas, because he was being evicted from his apartment." (R.R. Vol. 3 at 47)

2. Terra Kerr "testified that she performs head to toe examinations" (R.R. Vol. 3 at 58-59) "Natasha provided a history of vaginal and anal penetration by Appellant," (R.R. Vol. 3 at 73), including "Natasha's last vaginal penetration from Appellant was on March 31, 2009. (R.R. Vol. 3 at 74). She noted that Natasha informed her that Appellant never used contraceptives, (R.R. Vol. 3 at 75), yet [Kerr] "testified that the examination did not reveal any trauma to Natasha's vagina, hymen, cervix, or perineum." (R.R. Vol. 3 at 80-84) Kerr "admitted that the only evidence of a sexual assault was Natasha's testimony." (R.R. Vol. 3 at 105).

3. Zury "Phillips testified that she compared DNA found on Natasha's vaginal swabs, oral swabs, fingernail swabs, and panties with Appellant's DNA (R.R. Vol. 3 at 112). Appellant was excluded as a DNA contributor to any of the substances tested, (R.R. Vol. 3 at 113) DNA found on the various swabs and the panties did not match Appellant's DNA. (R.R. Vol. 3 at 117)

4. Susan Obhiambo, at the Harris County Children's Assessment Center, her "role was to obtain the facts from the child. (R.R. Vol. 3 at 124) She conceded that Natasha's answers about intercourse with Appellant were very vague." (R.R. Vol. 3 at 130) as it should be from one who was never had any type of sexual intercourse.

5. Natasha Youngblood "testified she finally decided to run away from Appellant when he told her that he was moving them to San Antonio, Texas, (R.R. Vol. 3 at 176)[She did not want to leave her friends](R.R. Vol. 3 at 176).

6. Lawrence Thompson, Jr., director of therapy at the Harris County Children's Assessment Center, "conceded that he almost always testifies on behalf of the State, (R.R. Vol. 4 at 22), and [admitted he has not met Natasha, seen her videotaped interview, nor read the police report](R.R. Vol. 4 at 22) his testimony was used by the State to bolster Natasha's credibility.

Physical evidence was collected by Terra Kerr and DNA evidence was tested by Zury Phillips. The outcome was no showing of a Sexual Assault, and unlike in **Brown v. State**, 881 S.W.2d 582; **Glover v. State**, 787 S.W.2d 544; and **Roberson v. State**, 16 S.W.3d 156; the DNA evidence in this case proves the Appellant was not the perpetrator as Natasha's statement to Terra Kerr or Natasha's testimony in court.

The Court instructed the jury to disregard Natasha's statement that "she 'believed' that Appellant had been in jail." (MO pg. 19 ¶ 2) The First Court of Appeals concluded that the complainant's testimony was not so inflammatory as to suggest that the trial court's curative instruction was inadequate. See **Murray**, 24 S.W.3d at 002. However, Natasha's entire testimony, even if given without emotion; its context and conveyances were emotionally moving and inflammatory, which curative instructions would not prevent the jury from being unfairly prejudiced.

The Court of Appeal on Appellant's First Issue agrees that the sole testimony would support [the jury reaching a rational decision](MO, pg. 10 ¶ 1), but on Appellant's Third Issue, the same witness in her statement regarding Appellant [that she "believed" that Appellant had been in jail](MO, pg. 19 ¶ 2) was not supportive enough to require a mistrial or a more severe final instruction. See **Bauder v. State**, 921 S.W.2d at 698.

## VI. CONCLUSION

Appellant shows without the State's witnesses used to bolster the credibili

-8-

ity and testimony of the complainant, the physical evidence shown in trial impeached Natasha's testimony as well as showing of proof that the identity of a possible Sexual Assault was not the Appellant. This DNA evidence was shown through two (2) of the State's witnesses and other three (3) witnesses showed Natasha's vague descriptions of events surrounding what was the day before and years ago. These statements still allowed the jury to believe he was villianous, and more "believing" he was in jail provide the jury with their misunderstanding of relevent conduct, instruction or not.

### PRAYER

WHEREFORE, ALL PREMISES CONSIDERED, for the reasons and grounds above show, the Appellant prays this Court reverse and remand or any other curative means for this cause.

Respectfully Submitted, *Carl Edmond Yancy #1842638*
Carl Edmond Yancy, TDCJ-CID #1842638
Alfred Stringfellow Unit
1200 F.N. 655
Rosharon, Texas 77583

### VERIFICATION

I, Carl Edmond Yancy, Petitioner Pro-Se, being presently incarcerated at the Alfred Stringfellow Unit, of the TDCJ-CID, in Brazoria County, Texas, verify and declare under the penalty of perjury that the above allegations contained in this Petitions For Discretionary Review are true and correct. Affirmation made pursuant to 28 U.S.C. § 1746.

EXECUTED on this the 15th day of December, 2014.

*Carl Edmond Yancy #1842638*
Carl Edmond Yancy, TDCJ-CID #1842638
Petitioner, Pro-Se

-5-

## CERTIFICATE OF SERVICE

I, Carl Edmond Yancy, declare and state, under penalty of perjury that the foregoing is a true and correct copy of this Petition For Discretionary Review was sent to Devon Anderson, Harris County District Attorney, addressed 1201 Franklin, Suite 600, Houston, Texas 77002 by placing the same in the Internal Mailing System of the Alfred Stringfellow Unit, an approved receptacle of the U.S.M.S., postage prepaid, First Class Mail on the 15th day of December, 2014.

Carl Edmond Yancy #1842638
Carl Edmond Yancy/ TDCJ-CID #1842638
Petitioner, Pro-Se
Alfred Stringfellow Unit
1200 F.M. 655
Rosharon, Texas 77583

Cause No. PD-1346-14

IN THE

COURT OF CRIMINAL APPEALS

AUSTIN TEXAS

_____

CARL EDMOND YANCY                    §
      Appellant                       §

vs.                                  §   TRIAL COURT No. 1239111

THE STATE OF TEXAS                   §
      Appellee                        §

_____

### CERTIFICATE OF COMPLIANCE

This document complies with the type face requirements of Tex.R.App.P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of Tex.R.App.P. 9.4(i) because it contains approximately 1,944 words.

Respectfully Submitted, _Carl Edmond Yancy #1842638_
Carl Edmond Yancy, TDCJ-CID #1842638
Alfred Stringfellow Unit
1200 F.M. 655
Rosharon, Texas 77583

Opinion issued July 24, 2014

STATE SEAL

In The

Court of Appeals

For The

First District of Texas

————————————

NO. 01-13-00168-CR

————————————

CARL EDMOND YANCY, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 178th District Court
Harris County, Texas
Trial Court Case No. 1239111

MEMORANDUM OPINION

A jury found appellant, Carl Edmond Yancy, guilty of the offense of aggravated sexual assault of a child under fourteen years of age. After fin-

---

See TEX.PENAL CODE ANN. § 22.021(a)(1)(B)(i), (a)(2)(B)(Vernon Supp. 2013).

true the allegation in an enhancement paragraph that he had previously been convicted of a felony, the jury assessed appellant's punishment at confinement for forty-five years and a fine of $10,000. In three issues, appellant contends that the evidence is legally and factually insufficient to support his conviction and the trial court erred in supplementing the jury charge at punishment and denying his motion for mistrial.

We affirm.

## Background

The complainant testified that in 2001, when she was in the third grade and living in an apartment with her mother, sister, and appellant, who was her mother's boyfriend, appellant began "touching [her] breasts." In 2002, when she was "nine or ten years old," appellant began "[i]nserting his penis into [her] vagina...once or twice a week" while he mother was at work. The complainant could not remeber the details of the first incident; however, each time, the sequence of events was generally the same: appellant would call her into his room, she would remove her clothing and get into his bed, and he would "get on top" of her. Although she reported appellant's conduct to her mother, she was unsuccessful in finding new living arrangements.

In 2005, the complainant's mother was hit and killed by a car. Thereafter, the complainant and her sister continued to live with appellant, and his "acts"

-2-

increased because her mother "wasn't there to stop him." By the time the complainant was twelve years old, appellant was sexually assaulting her three to four times a week." And he required her to "have sex with him in [his] room for a certain amount of time" anytime she "got in trouble." Appellant would say to the complainant the word, "tonight," which meant that she was to go to his room. She could not remember the exact dates of the assaults because he had assaulted her "hundreds of times." The complainant did not report appellant's conduct to anyone at that time because she "didn't trust anybody" and "didn't know what would happen." She was afraid that she and her sister, who was "special needs," might be seperated.

The complainant further testified that in 2006, she and her sister moved with appellant to an apartment in Webster, Texas, where she developed a close friendship with a high-school classmate, who also lived in the same apartment complex. On April 1, 2009, upon learning that appellant was being evicted from the apartment and intended to move to San Antonio, the complainant and her sister decided to run away, and they contacted the complainant's classmate.

The girls went to the classmate's house, where they told Kathy Brown about appellant's conduct. Brown notified law enforcement authorities, and the complainant, who was then sicxteen years old, was taken into custody by the

-3-

Department of Family and Protective Services. Her sister, who was then eighteen years old, went to live with her biological father.

On cross-examination, the complainant testified that appellant was strict, made her do her homework, and wanted her to do well in school and behave. He had been very protective of her since her mother had died, and he was afraid to leave her alone. The complainant admitted that she had had some disciplinary problems in school and had come forward with her allegations against appellant "coincidentally" at the same time he was about to move her to San Antonio. She agreed that she knew her allegations would "put an end to [it]," but she explained that her "plan was to get away from [appellant]."

Brown testified that her daughter and the complainant were "best friends" and talked with each other every day. Brown periodically saw appellant walking to a store or riding his bicycle, and she had had numerous conversations with him. He explained to her that the complainant's mother had been killed while trying to cross a highway on foot and, since that time, the complaiant and her sister had continued to live with him because their biological father was unable to care for them. Brown noted that appellant was very protective of the compainant and, when she came to visit, appellant would escort her to Brown's home, and Brown would walk her home. She also noted that the complainant addressed appellant by his first name, "Carl," and displayed animosity toward him. Brown further

-4-

explained that on April 1, 2009, the complainant and her sister came to her house and, although the complainant was crying and initially did not want to talk, she told Brown "what was going on." Brown then reported the matter to law enforcement authorities.

Dr. Lawrence Thompson, Director of Theropy at the Harris County Children's Assessment Center ("CAC"), testified that "in more than half of all cases of child sexual abuse, there is a delayed disclosure." The delay can be "days or weeks or months," but it is "not uncommon for...years, decades, or even a lifetime [to] go by" before a person discloses sexual abuse they suffered as a child Thompson explained that if a child makes such disclosure "to a caregiver like a mother," who then does not protect the child from further abuse, the child is thereafter less likely to make disclosure to others. And "dependance on a perpetrator...can contribute to delayed disclosure." Thompson further explained that, as a "protective mechanism," some children respond to trama by displaying a "flat effect," that is, appearing unaffected and showing no outward signs that might prompt someone to ask questions.

Tarra Kerr, a CAC sexual assault nurse examiner, testified that she examined the complainant on April 1, 2009. The complainant "reported [a] history of vaginal and anal penetration by [appellant]" and that she had "been unsafe since fourth grade...when he started sexually abusing [her]." The last assault had

-5-

occurred on March 31, 2009. From her examination, Kerr noted no "acute injuries" or any findings that either indicated or precluded the reported activity. Kerr explained that a finding of "no injuries" is not "inconsistent with a claim of sexual abuse" because "injuries are rarely found" in sexual assault examinations.

Zury Phillips, a DNA Analyst at the Harris County Institute of Forensic Sciences, testified that in 2012, she tested a series of oral, vaginal, and anal swabs taken from the complainant in 2009. Zury noted that appellant was excluded as a source of the DNA profiles on these samples.

After the jury found appellant guilty, the complainant's sister, during the punishment phase of the trial, testified that appellant had engaged in sexual intercourse with her on a weekly basis beginning when she was twelve years old; she had witnessed appellant "on top of" the complainant in his bed; and she and the complainant had discussed trying to get away from appellate because they were "tired of it."

## Sufficiency of the Evidence

In his first issue, appellant argues that the evidence is legally and factually insufficient to support his conviction because the complainant's testimony was not credible or corroborated by physical evidence.

We review the legal sufficiency of the evidence by considering all of the evidence "in the light most favorable to the prosecution" to determine whether any

-6-

"rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 31819, 99 S.Ct. 2781, 2788-89 (1979). Our role is that of a due process safeguard, ensuring only the rationality of the trier of fact's finding of the essential elements of the offense beyond a reasonable doubt. See Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). We give defernece to the responsibility of the fact finder to fairly resolve conflicts in testimony, weigh evidence, and draw reasonable inferences from the facts. Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). However, our duty requires us to "ensure that the evidence presented actually supports a conclusion that the defendant committed" the criminal offense of which he is accused. Id. We now review the factual sufficiency of the evidence under the same appellate standard of review as that for legal sufficiency. Ervin v. State, 331 S.W.3d 49,52-56(Tex.App.-Houston [1st Dist.] 2010,pet.ref'd.).

A person commits the offense of aggravated sexual assault of a child under the age of fourteen if the person "intentionally or knowingly...causes the penetration of the anus or sexual organ of a child by any means" and the complainant is "younger than 14 years of age." TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), (a)(2)(B)(Vernon Supp. 2013).

Here, the complainant testified that in 2012, when she was "nine or ten years old," appellant began "[i]nserting his penis into [her] vagina...once or twice a

-7-

week" while her mother was at work. A conviction under section 22.021 "is supportable on the uncorroborated testimony" of a complainant. See TEX. CODE CRIM. PROC. ANN. art. 38.07(a)(Vernon Supp. 2013); Bryant v. State, 340 S.W.3d 1, 14 (Tex.App.-Houston [1st Dist.] 2010, pet.ref'd)(stating child complainant's testimony, standing alone, is sufficient to support conviction for aggravated sexual assault of child); Sandoval v. State, 52 S.W.3d 851,854 & n.1(Tex. A pp.-Houston [1st Dist.] 2001,pet.ref'd). The additional requirement of article 38.07, i.e., that the complainant inform another person of the offense within one year after the offense is alleged to have been committed, does not apply when, as here, the complainant was seventeen years of age or younger at the time of the offense. See TEX. CODE CRIM.PROC. ANN. art. 38.07(b)(1). Here, from the complainant's testimony alone, the jury could have reasonably concluded that appellant intentionally or knowingly caused the penetration of the sexual organ of a child under fourteen years of age. See TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), (a)(2)B). Moreover, Kerr testified that on April 1, 2009, the complainant reported to her a "history of vaginal and anal penetration by [appellant]" and that she had "been unsafe since fourth grade...when he started sexually abusing [her]."

Appellant argues that the evidence is insufficient because the complainant's testimony is not corroborated by medical evidence. The record shows that, in April 2009, a medical examination was performed on the complainant. Although

-8-

the examination revealed no "acute injuries" or any findings that either indicated or precluded the reported activity, and appellant was excluded as a source of the DNA profiles found on samples obtained from the complainant, such corroborating evidence is not required. See TEX. CODE CRIM.PROC. ANN. art. 38.07(a)-(b); Bryant, 340 S.W.3d at 14. And Kerr explained that a finding of "no injuries" is not "inconsistent with a claim of sexual abuse" because "injuries are rarely found" in sexual assault examinations.

Appellant also argues that the complainant's testimony was not credible because she "bypassed many opportunities over the years to alert the police, school counselors, teachers, or friends of the abuse"; "claimed that her mother never confronted Appellant or called the police after she told her mother that Appellant had sexually abused her"; and "did not even tell her best friend...until shortly before Appellant planned to move her to San Antonio." Appellant asserts that the complainant's testimony shows that she invented a "tale of hidden sexual abuse to keep Appellant from seperating her from her friends in Webster."

Dr. Thompson testified that "in more than half of all cases of child sexual abuse, there is [a] delayed disclosure." And the delay can be "days or weeks or months," but it is "not uncommon for...years, decades, or even a lifetime [to] go by" before a person discloses sexual abuse they suffered as a child. And he explained that circumstances such as having previously made disclosure to a

-9-

caregiver who did not then protect the child and dependence on the perpetrator can each contribute to a further delayed disclosure. The testimony reveals the presence of both circumstances in this case.

The jury is the sole judge of the facts, the credibility of the witnesses, and the weight to be given the witnesses' testimony. See Williams, 235 S.W.3d 750. In this case, the jury made the determination that the complainant's testimony was credible. We act only to ensure that the jury reached a rational decision. See Moreno, 755 S.W.2d at 867. Viewing the evidence in the light most favorable to the verdict, a rational trier-of-fact could have found beyond a reasonable doubt all the essential elements of the offense of aggravated sexual assault of a child under fourteen years of age. See Williams, 235 S.W.3d at 750. Accordingly, we hold that the evidence is sufficient to support appellant's conviction.

We overrule appellant's first issue.

### Charge Error

In his second issue, appellant argues that the trial court erred in not instructing the jury "during the punishment phase [of trial] on the reasonable doubt standard of proof concerning extraneous offenses" because the complainant's sister testified that appellant "made [her] have sex" with him in his room "[e]very week," beginning when she was twelve years old. Appellant asserts that although the trial court "supplemented the jury charge with the proper instruction and then read the

-10-

supplemental [instruction] to the jury before the jury reached [its] verdict," the error of "initially failing to include the instruction" was not cured. He further asserts that he was not allowed to make additional closing arguments to "ensure that the jury clearly understood" the instruction.

In regard to the admissibility of evidence of extreneous offenses and bad acts during the punishment phase of trial, the Texas Code of Criminal Procedure provides, in pertinent part, as follows:

> Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

TEX. CODE CRIM.PROC. ANN. art. 37.07, § 3(a)(1)(Vernon Supp. 2013). Thus, a trier-of-fact may not consider evidence of an extraneous offense or bad act in assessing punishment unless it first concludes beyond a reasonable doubt that the defendant committed the offense or act. Id.; see also Huizar v. State, 12 S.W.3d 479, 484 (Tex,Crim.App. 2000); Fields v. State, 1 S.W.3d 687, 688 (Tex.Crim. App. 1999). If the trier-of-fact determines beyond a reasonable doubt that the

-11-

defendant committed the offense or act, it may then use the evidence however it chooses in assessing punishment. Huizar, 12 S.W.3d at 484.

When evidence of extraneous offenses or bad acts is admitted during the punishment phase of a trial, the trial court must instruct the jury that the evidence may only be considered if it proves the commission of the offense or bad act beyond a reasonable doubt. See TEX.CRIM.PROC. CODE ANN. art. 36.14 (Vernon 2007)(providing trial court shall instruct jury on "law applicable to the case"); Huizar, 12 S.W.3d at 483-84(stating that article 37.07, section 3(a), is "law applicable" in non-capital punishment cases and trial courts are required to sua sponte instruct juries on beyond-a-reasonable-doubt standard concerning extraneous offenses and bad acts). Because a trial court bears the responsibility to so instruct a jury, a defendant is not required to make an objection to preserve error, and the failure to so instruct the jury constitutes error. Huizar, 12 S.W. 3d at 484.

Here, the complainant's sister, during the punishment phase of trial, testified that appellant "made [her] have sex" with him in his room "[e]very week," beginning when she was twelve years old. At the close of the punishment phase, and outside the presence of the jury, the trial court tendered a proposed jury charge to the parties, and each affirmatively stated that it had no objection to proposed charge.It is undisputed that the proposed charge did not contain an instruction on

the beyond-a-reasonable-doubt standard for extraneous offenses and bad acts. The trial court then read the charge to the jury, each side gave its closing argument, and, at approximately 5:00 p.m., the jury began deliberations. At 6:07 p.m., the trial court, having realized that it had not given the jury an extraneous-offense instruction, instructed the jury "to stop deliberations" and return the next Monday.

The next Monday, after discussion with counsel for appellant and the State, the trial court, outside the presence of the jury, noted that at the request of appellant and with the agreement of the State, it would supplement its charge with the following instruction:

> You may consider evidence of an extraneous crime or bad act in assessing punishment, even if the defendant has not yet been charged with or finally convicted of the crime or act. However, you may consider such evidence only if the extraneous crime or bad act has been shown by the State beyond a reasonable doubt to have been committed by the defendant or is one for which the defendant could be criminally--could be held criminally responsible.

> The prosecution does not have to prove an extraneous crime or bad act beyond all possible doubt. The prosecution's proof must exclude all reasonable doubt concerning the extraneous crime or bad act.

> Therefore, if you find and believe beyond a reasonable doubt that the defendant committed an extraneous crime or bad act or could be held criminally responsible for an extraneous crime or bad act, then you may consider such evidence in assessing the defendant's punishment. However, if you have a reasonable doubt that the defendant committed an extraneous crime or bad act or could be held criminally responsible for the extraneous crime or bad act, then you will not consider such evidence in assessing punishment.

-13-

Appellant and the state each affirmatively stated that it had no objections to the instruction.

The trial court then informed the jury:

Good morning members of the jury...The reason for this delay is because the Court has become aware that...another instruction was necessary. It was omitted from the first instruction given to you on Friday. That new instruction is on Page 3 now. They're not number, but Page 3 of the instruction starts with, "you may consider evidence," and then it ends with, "in assessing punsihment." Everybody have that page? Okay. Since that's part of the Court's charge, it needs to be read in context with the Court's charge. I'm going to read the Court's charge to you again.

After it read the instruction to the jury, the trial court further instructed it as follows: "Members of the jury, retire to the jury room and restart your deliberations using this in place of the other one. Thank you."

Appellant asserts that the "fact that the trial court supplemented the jury charge with the proper instruction and then read the supplemental charge to the jury before the jury reached a verdict did not cure the trial court's error of initially failing to include the instruction."

Texas Code of Criminal Procedure article 36.16, which governs the "Final Charge," provides as follows:

After the judge shall have received the objections to his main charge, together with any special charges offered, he may make such changes in his main charge as he may deem proper, and the defendant or his counsel shall have the opportunity to present their objections thereto..., and thereupon the judge shall read his charge to the jury as finally written, together with any special charges given, and no

-14-

further exception or objection shall be required of the defendant in order to preserve any objections or exceptions theretofore made. After the argument begins no further charge shall be given to the jury unless required by the improper argument of counsel or the request of the jury, or unless the judge shall, in his discretion, permit the introduction of other testimony, and in the event of such further charge, the defendant or his counsel shall have the right to present objections....

TEX. CRIM. PROC. CODE ANN. art. 36.16 (Vernon 2006). The Texas Court of Criminal Appeals has concluded that, in light of the purpose of article 36.16, a trial court may before verdict withdraw and correct its charge if convinced an erroneous charge has been given. Smith v. State, 898 S.W.2d 838, 855 (Tex.Crim.App. 1995)(declining to reverse when trial court corrected erroneous jury charge after jury began deliberations).

Here, the trial court determined that the charge as initially given allowed the jury to consider the testimony of the complainant's sister without first determining beyond a reasonable doubt that appellant committed the alleged extraneous acts. Thus, the trial court supplemented the charge to comply with the statute. See TEX. CRIM.PROC. CODE ANN.art. 37.07, §3(a)(1);Huizar, 12 S.W.3d at 483-84(stating trial court is required to sue sponte instruct jury on beyond-a-reasonable-doubt standard concerning extreneous offenses and bad acts).

Accordingly, we hold that the trial court did not err when it issued the supplemental instruction and directed the jury to consider the charge as supplemented. See Smith, 898 S.W.2d at 854-55 (holding that charge may be

amended any time prior to verdict); Bustillos v. State, 464 S.W.2d 118,125 (Tex. Crim.App. 1971)(holding that "the court may before verdict withdraw and correct its charge if cinvinced an erroneous charge has been qiven"). When, as here, we determine that charge error did not occur, our analysis ends. See Kirsh v. State, 357 S.W.3d 645, 649 (Tex.Crim.App. 2012).

Appellant further asserts that the charge was modified without the opportunity for further argument. The record, however, shows that the trial court gave both sides the opportunity to reargue, and both declined.

We overrule appellant's second issue.

## Mistrial

In his third issue, appellant argues that the trial court erred in denying his motion for mistrial because the complainant, during her testimony, stated that he had been "in jail for a period of time," which "left the jury with the impression that [he] was generally a criminal" and "allowed the State to impeach [him] with his past history without [him] taking the witness stand."[2]

We review a trial court's ruling on a motion for mistrial for an abuse of discretion. Archie v. State, 221 S.W.3d 695,699(Tex.Crim.App. 2007); Bryant,

---

[2]  Appellant complains that the trial court erred in denying his "motion for new trial." However, because he complains about the portion of the record in which the trial court denied his motion for mistrial and the record does reflect the he filed a motion for new trial, we interpret his complaint to be that the trial court erred in denying his motion for mistrial.

-16-

340 S.W.3d at 12. "Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required." Hawkins v. State, 135 S.W.3d 72, 77(Tex. Crim.App. 2004). A trial court may properly declare a mistrial "if a verdict of conviction could be reached but would have to be reversed on appeal due to an obvious procedural error." Ladd v. State, 3 S.W.3d 547, 567 (Tex.Crim.App. 1999). Whether an error necessitates a mistrial must be made by examining the facts of each case. Hernandez v. State, 805 S.W.2d 409, 413-414 (Tex. Crim. App. 1990). And we must uphold the trial court's ruling if it lies within the zone of reasonable disagreement. Archie, 221 S.W.3d at 699.

Appellant asserts that the complainant, during directed examination improperly testified that he had previously been in jail, as follows:

[State]:           Do you remember about where you lived then?

[Complainant]:     ...I remember the apartments in my head, visually.

[State]:           So it was an apartment?

[Complainant]:     Uh-huh.

[State]:           And it was the same thing, that would have been your mother, yourself--

[Complainant]:     My mother, myself. I believe Carl was in jail for that period of time.

[Defense Counsel]: Your Honor, I'm going to object.

THE COURT:         All right. Sustained.

[Defense Counsel]: Judge, I'd ask that the jury be...instructed to disregard that last statement.

THE COURT:         Disregard that last comment by the witness.

-17-

[Defense Counsel]:    And I move for a mistrial.

THE COURT:    That's denied.

(Emphasis added). Appellant further asserts that the trial court's instruction to disregard the complainant's statement was "not sufficient to remove the harmful impression" and "only the granting of a new trial would remove the incurrable prejudice" of the statement.

Declaring a mistrial based on improper testimony is required only when the evidence is "clearly prejudicial to the defendant and is of such character as to suggest the impossibility of withdrawing the impression produced on the minds of the jurors." Russeau v. State, 171 S.W.3d 871, 885 (Tex. Crim. App. 2005). Otherwise, a prompt instruction to disregard generally cures the prejudicial effect of improper testimony, even that regarding extreneous offenses. Lopez v. State, 314 S.W.3d 70, 73 (Tex. App.-Waco 2010, no pet.); see Marshall v. State, 210 S.W.3d 618, 628-29 (Tex.Crim.App. 2006). Generally, harm from testimony that implies that a defendant has been previously incarcerated will be cured by a prompt instruction to the jury to disregard. Lopez, 314 S.W.3d at 73(citing Kemp v. State, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992); Jackson v. State, 287 S.W.3d 346, 345 (Tex.App.-Houston [14th Dist.] 2009, no pet.)). "[O]nly in the most egregious cases when there is an 'extremely inflammatory statement' is an instruction to disregard...considered an insufficient response by the trial court."

-18-

Williams v. State, 417 S.W.3d 162, 176 (Tex.App.-Houston [1st Dist.]2013,pet. ref'd)(citations omitted). Otherwise, the curative instruction will tend to have force. Id. (citing Moore v. State, 999 S.W.2d 385, 405 (Tex.Crim.App.1999)).

In Murray v. State, a police officer, during his testimony, mentioned the defendant's parole officer, which the defendant asserted constituted an improper reference to his prior incarceration. 24 S.W.3d 881,892 (Tex.App.-Waco 2000, pet, ref'd). The trial court immediately instructed the jury to disregard the statement and denied the defendant's motion for mistrial. Id. The court of appeals held that the trial court did not err in denying the motion for mistrial because the testimony was not so inflammatory as to suggest that the curative instruction was inadequate. Id.

Here, as in Murray, the objectionable reference to appellant having been "in jail" was immediately followed by the trial court's instruction to disregard the comment. See Id. And we presume that the jury heeded the trial court's instruction. See Bryant, 340 S.W.3d at 13. We note that the objected-to comment did not come from a police officer, who asserted that he had spoken with a parole officer, but from the complainant, who stated only that she "believed" that appellant had been in jail. We conclude that the complainant's testimony was not so inflammatory as to suggest that the trial court's curative instruction was inadequate. See Murray, 24 S.W.3d at 892; see also Williams, 417 S.W.3d at 176.

-19-

Accordingly, we hold that the trial court did not err in denying appellant's motion for mistrial.

We overrule appellant's third issue.

## Conclusion

We affirm the judgement of the trial court.


                                        Terry Jennings
                                        Justice


Panel consists of Justices Jennings, Bland, and Massengale.

Do not publish.   TEX.R.APP.P. 47.2(b).

Edmond
J - ID
J - ID #
SEY II UNIT
FM 655
HARON, TEXAS · 77583

72658

074-1-23

Legal Mail
Cause No. PD-1346-14





Court of Criminal Appeals
Supreme Court Bldg
201 W. 14th St. Rm 106
Austin, TX 78711-2308

OK