

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-23-00139-CV

**IN THE MATTER OF M.A.C.S.-C.**

From the County Court at Law, Gillespie County, Texas
Trial Court No. JV-0018CCL
Honorable Christopher G. Nevins, Judge Presiding

Opinion by:     Luz Elena D. Chapa, Justice

Sitting:        Rebeca C. Martinez, Chief Justice
                Luz Elena D. Chapa, Justice
                Beth Watkins, Justice

Delivered and Filed: February 21, 2024

AFFIRMED

Appellant M.A.C.S.-C.[1] challenges the juvenile court's order waiving its exclusive original jurisdiction and transferring him to criminal district court to stand trial on his sexual assault charge. He argues the juvenile court abused its discretion by (1) denying his motion to quash, (2) finding the State exercised due diligence in attempting to complete the juvenile proceeding before his eighteenth birthday, and (3) finding for reasons beyond the State's control it was not practicable to proceed in juvenile court before his eighteenth birthday. We affirm.

---

[1] "Neither the child nor his family shall be identified in an appellate opinion rendered in an appeal or habeas corpus proceedings related to juvenile court proceedings under this title. The appellate opinion shall be styled, 'In the matter of ..........,' identifying the child by his initials only." TEX. FAM. CODE § 56.01.

## BACKGROUND

M.A.C.S.-C. was born in late November 2004. On August 30, 2021, the State filed an original petition alleging that on March 13, 2021, he engaged in delinquent conduct by committing sexual assault pursuant to Texas Penal Code section 22.011. On November 7, 2022, the State filed a petition for discretionary transfer to criminal court pursuant to Texas Family Code section 54.02 subsections (a) and (j). M.A.C.S.-C. filed a motion to dismiss for lack of compliance with sections 51.0412 and 54.02, and for lack of jurisdiction. After a January 10, 2023 hearing, County Court at Law Judge Christopher G. Nevins—presiding over the juvenile court—granted the petition and transferred M.A.C.S.-C. to criminal district court to stand trial on his sexual assault charge.

This appeal followed.

## MOTION TO QUASH

M.A.C.S.-C. argues the juvenile court abused its discretion in denying his motion to quash the petition. "Juvenile proceedings are generally governed by the Texas Rules of Civil Procedure." *Matter of L.A.G.R.*, No. 07-14-00072-CV, 2014 WL 5462540, at *2 (Tex. App.—Amarillo Oct. 28, 2014, pet. denied) (mem. op.); *see* TEX. FAM. CODE § 51.17(a). "As such, a complaint about a pleading defect in a juvenile proceeding should be raised by special exceptions, not by a motion to quash." *L.A.G.R.*, 2014 WL 5462540, at *2; *see In re J.P.*, No. 04-07-00612-CV, 2008 WL 4595030, at *2 (Tex. App.—San Antonio Oct. 15, 2008, no pet.) (mem. op.); *see* TEX. R. CIV. P. 90, 91. "However, because we are to construe pleadings liberally, we treat an improperly filed motion to quash as special exceptions." *L.A.G.R.*, 2014 WL 5462540, at *2; *see, e.g.*, *In re M.T.*, No. 13-05-434-CV, 2007 WL 2265072, at *2 n.1 (Tex. App.—Corpus Christi-Edinburg Aug. 9, 2007, no pet.) (mem. op.); *see also* TEX. R. CIV. P. 71 ("When a party has mistakenly designated any plea or pleading, the court, if justice so requires, shall treat the plea or pleading as if it had

been properly designated."); *In re J.Z.P.*, 484 S.W.3d 924, 925 (Tex. 2016) (per curiam) (providing same for motions).

A juvenile court's ruling on special exceptions is not subject to interlocutory review. *See, e.g.*, *Saucedo v. El Paso Child.'s Hosp. Corp.*, 677 S.W.3d 62, 68 (Tex. App.—El Paso 2023, no pet.); *Delgado v. River Oaks Police Dep't*, No. 02-15-00205-CV, 2016 WL 6900900, at *2 (Tex. App.—Fort Worth Nov. 23, 2016, no pet.) (mem. op.); *see also* TEX. CIV. PRAC. & REM. CODE § 51.014(a). Here, the juvenile court's ruling is interlocutory because we have no final adjudication or order. It is therefore not appealable, and M.A.C.S.-C.'s point of error is overruled.[2]

## TRANSFER ORDER

M.A.C.S.-C. contends the juvenile court did not have jurisdiction pursuant to Family Code section 51.0412 to consider the State's transfer petition because, as he argues, the record does not demonstrate the State exercised due diligence where possible in attempting to complete the juvenile delinquency proceeding before his eighteenth birthday. He further contends the juvenile court abused its discretion because the State's evidence was insufficient to show how the delay in bringing the case to trial before his eighteenth birthday was beyond the State's control pursuant to Family Code section 54.02(j).

### A. The Juvenile Justice Code

The Juvenile Justice Code governs juvenile delinquency proceedings. *See* TEX. FAM. CODE §§ 51.01–61.107; *Matter of W.A.*, No. 01-23-00137-CV, 2023 WL 5020627, at *4 (Tex. App.—Houston [1st Dist.] Aug. 8, 2023, pet. denied) (mem. op.). "Juvenile courts have exclusive original jurisdiction over allegations by the State that a child has engaged in delinquent conduct." *W.A.*,

---

[2] Even if we were to treat it as a motion to quash, there is no basis to treat the motion's denial as an appealable interlocutory order. The Juvenile Justice Code specifically identifies immediately appealable orders in Texas Family Code Section 56.01, and a "motion to quash" a petition is not enumerated therein. *See* TEX. FAM. CODE § 56.01.

2023 WL 5020627, at *4; TEX. FAM. CODE §§ 51.04(a); 51.02(2) (defining "child" to include person ten years old or older and under seventeen or "seventeen years of age or older and under 18 years of age who is alleged or found to have engaged in delinquent conduct or conduct indicating a need for supervision as a result of acts committed before becoming 17 years of age"). However, juvenile court jurisdiction "is not absolute." *W.A.*, 2023 WL 5020627, at *4.

"Generally, when a child who is the subject of delinquency proceedings turns eighteen years old, the juvenile court's jurisdiction is limited to either dismissing the case or transferring the child to criminal district court for criminal proceedings." *Id.*; *see* TEX. FAM. CODE §§ 51.0412 (authorizing juvenile court to retain jurisdiction over incomplete proceedings once child has turned eighteen in limited circumstances); 54.02(j) (providing requirements for transfer if the person has turned eighteen years old).

### B. Juvenile Justice Code Section 51.0412

Under Texas Family Code section 51.0412, the juvenile court retains jurisdiction over a juvenile respondent turned adult, if:

> (1) the petition or motion was filed while the respondent was younger than 18 or 19 years of age, as applicable;
>
> (2) the proceeding is not complete before the respondent becomes 18 or 19 years of age, as applicable; and
>
> (3) the court enters a finding in the proceeding that the prosecuting attorney exercised due diligence in an attempt to complete the proceeding before the respondent became 18 or 19 years of age, as applicable.

TEX. FAM. CODE § 51.0412; *see, e.g.*, *Matter of N.G.W.*, 648 S.W.3d 490, 492 (Tex. App.—San Antonio 2021, no pet.).

"The Texas Family Code does not define diligence as it is used in section 51.0412." *In re B.R.H.*, 426 S.W.3d 163, 168 (Tex. App. 2012). In *B.R.H.*, the First Court of Appeals defined it as "requir[ing] the State to 'move ahead' or 'reasonably explain delays.'" 426 S.W.3d at 168; *see,*

*e.g.*, *Matter of J.C.W.G.*, 613 S.W.3d 560, 566 (Tex. App.—San Antonio 2020, no pet.) (same, citing *B.R.H.*). "Due diligence does not require the State to 'do everything perceivable and conceivable to avoid delay.'" *B.R.H.*, 426 S.W.3d at 168 (concluding some evidence supported juvenile court's findings and juvenile court therefore did not abuse its discretion where evidence showed State moved forward with prosecution by filing charges within limitations period and about eighteen months after alleged delinquent conduct took place, and by promptly amending petition to request determinate sentencing upon grand jury approval); *see, e.g.*, *J.C.W.G.*, 613 S.W.3d at 567 (concluding juvenile court did not abuse its discretion where evidence showed (1) judge retired, (2) juvenile court transferred case without notifying parties and canceled next hearing, (3) district court assigned case to visiting judge, (4) State then requested follow-up hearing, (5) juvenile changed his lead counsel, and (6) juvenile requested fifty-day continuance); *In re J.C.C.*, 952 S.W.2d 47, 49–50 (Tex. App.—San Antonio 1997, no pet.) (concluding juvenile court erred in finding State used due diligence in not prosecuting appellant before eighteenth birthday because no evidence supported juvenile court's conclusion). And "[t]he State is not responsible for court delays, which can be described as exceptional circumstances." *J.C.W.G.*, 613 S.W.3d at 567; *see also Matter of C.C.C.*, No. 13-21-00371-CV, 2022 WL 710143, at *11 (Tex. App.—Corpus Christi-Edinburg Mar. 10, 2022, no pet.) (mem. op.).

"Diligence is usually a question of fact that the trial court determines in light of the circumstances of each case." *B.R.H.*, 426 S.W.3d at 168; *see, e.g.*, *N.G.W.*, 648 S.W.3d at 492; *J.C.C.*, 952 S.W.2d at 49–50. "When reviewing factual issues, we defer to the trial court's findings unless the record contains no evidence to support them." *B.R.H.*, 426 S.W.3d at 168. "Even if we would have decided the matter differently, we may not disturb the trial court's decision unless it is shown to be arbitrary and unreasonable." *Id.*

## C. Juvenile Justice Code Section 54.02(j)

Juvenile Justice Code section 54.02(j) permits a juvenile court to "waive its exclusive original jurisdiction and transfer" a juvenile delinquency case to permit the former juvenile turned adult to be tried in a criminal district court if the juvenile court finds (1) the juvenile turned eighteen years old, (2) the juvenile was older than fifteen and under seventeen at the time he committed a second degree felony, (3) no adjudication concerning the alleged offense has been made, and (4) probable cause supports the juvenile committed the offense alleged. TEX. FAM. CODE § 54.02(j)(1)-(3), (5); *see Ex parte Thomas*, 623 S.W.3d 370, 378–79 (Tex. Crim. App. 2021). The State must also prove by "a preponderance of the evidence that":

> (A) for a reason beyond the control of the state it was not practicable to proceed in juvenile court before the 18th birthday of the person; or
>
> (B) after due diligence of the state it was not practicable to proceed in juvenile court before the 18th birthday of the person because:
>
> > (i) the state did not have probable cause to proceed in juvenile court and new evidence has been found since the 18th birthday of the person;
> >
> > (ii) the person could not be found; or
> >
> > (iii) a previous transfer order was reversed by an appellate court or set aside by a district court[.]

TEX. FAM. CODE § 54.02(j)(4); *Moore v. State*, 532 S.W.3d 400, 401 (Tex. Crim. App. 2017) (Section 54.02(j) "is meant to limit the prosecution of an adult for an act he committed as a juvenile if his case could reasonably have been dealt with when he was still a juvenile."). Because the statute only requires evidence of subsections (A) or (B), and because the transfer order does not include subsection (B) findings, we will limit our review to the sufficiency of the evidence supporting (A), i.e., whether a preponderance of evidence supports a finding that for a reason beyond the State's control it was not practicable to proceed in juvenile court before M.A.C.S.-C.'s

eighteenth birthday. *See, e.g.*, *Matter of M.L.C.*, No. 07-23-00137-CV, 2023 WL 4881928, at \*3 n.5 (Tex. App.—Amarillo July 31, 2023, no pet.) (mem. op.).

Subsection (A) in section 54.02(j)(4) does not define "control," and we therefore give the term its plain meaning. *See, e.g.*, *Thompson v. Tex. Dep't of Licensing & Regul.*, 455 S.W.3d 569, 570 (Tex. 2014) (per curiam); *State v. Holcombe*, 187 S.W.3d 496, 500 (Tex. Crim. App. 2006); *Matter of E.B.*, No. 12-22-00162-CV, 2022 WL 17074849, at \*3–4 (Tex. App.—Tyler Nov. 17, 2022, no pet.) (mem. op.). Black's Law Dictionary defines "control" as "[t]o exercise power or influence over." *Control*, BLACK'S LAW DICTIONARY 1210 (11th ed. 2019), *available at Westlaw*. Nor does it define "practicable," which Black's Law Dictionary defines as "reasonably capable of being accomplished; feasible in a particular situation." *Practicable*, BLACK'S LAW DICTIONARY.[3]

Taken together, the State must prove, for a reason beyond its ability to exercise power or influence, it was not reasonably feasible to proceed in juvenile court before M.A.C.S.-C.'s eighteenth birthday. *See, e.g.*, *Matter of B.C.*, No. 02-21-00444-CV, 2022 WL 1420533, at \*4 (Tex. App.—Fort Worth May 5, 2022, no pet.) (mem. op.) (providing new developments of person's trip to mental health hospital and commission of new offense beyond State's control when viewing evidence in light most favorable to juvenile court findings and requiring this court to give due deference to juvenile court findings when determining factual sufficiency); *Matter of N.J.T.*, No. 13-21-00089-CR, 2021 WL 4202165, at \*5 (Tex. App.—Corpus Christi-Edinburg Sept. 16, 2021, no pet.) (mem. op.) (concluding events beyond State's control even though transfer petition filed more than year and a half after case filed, where prior defense counsel filed motion for continuance and motion for authorization to secure investigator eight months after petition filed, defense counsel repeatedly filed "continuous" discovery motions, defendant failure to appear

---

[3] The "state" means law enforcement and the prosecution. *Moore*, 532 S.W.3d at 403–04.

caused two-month reset, and defense counsel schedule caused two resets, even though transfer petition hearing was reset on several occasions by State request because defense agreed to State resets and there were delays before diagnostic and social study had been filed); *J.C.W.G.*, 613 S.W.3d at 567–69 (concluding State's heavy caseload or investigatory delays not beyond State control but events beyond State control include, defense-caused or private actor-caused delays, delayed outcry, sitting judge's retirement and visiting judge's assignment, juvenile court case transfer, lead defense counsel change, and defense request for continuance); *In re L.M.B.*, No. 11-16-00241-CV, 2017 WL 253654, at \*2 (Tex. App.—Eastland Jan. 6, 2017, no pet.) (mem. op.) (concluding not practicable to proceed in juvenile court before eighteenth birthday considering outcry timing, juvenile court's calendar, attorneys' calendars, continuance motion, and time taken to complete evaluation).

### D. Standard of Review

"We use a two-step standard to review a juvenile court's order waiving its exclusive original jurisdiction and transferring a case to criminal district court." *W.A.*, 2023 WL 5020627, at \*5. "First, we review the challenged findings under a traditional evidentiary sufficiency review." *Id.* "In considering the legal sufficiency of evidence supporting a finding, we view the evidence in the light most favorable to the challenged finding and disregard contrary evidence unless a reasonable factfinder could not reject it." *Id.* ("If more than a scintilla of evidence supports the finding, then the evidence is legally sufficient."). "In conducting a factual sufficiency review, we consider all the evidence presented to determine whether the challenged finding conflicts with the great weight and preponderance of the evidence so as to be clearly wrong or unjust." *Id.*

"When the juvenile court sits as factfinder, as here, the court alone determines the credibility of witnesses and the weight to give their testimony." *Id.* "The factfinder may 'believe or disbelieve a witness's testimony, in whole or in part, and [is] tasked with weighing the evidence

and resolving any inconsistencies.'" *Id.* (quoting *Bell v. State*, 649 S.W.3d 867, 896 (Tex. App.—Houston [1st Dist.] 2022, pet. ref'd)) (alteration in original).

"If we conclude that the challenged findings are supported by legally and factually sufficient evidence, we proceed to the second step in our review: determining whether the juvenile court abused its discretion in ultimately waiving its jurisdiction and transferring the case." *Id.* "A court abuses its discretion when it acts arbitrarily or without reference to any guiding rules and principles." *Id.* "A juvenile court does not abuse its discretion merely because it bases its decision on conflicting evidence." *Id.*

### E. Analysis

Arguing the State did not use due diligence in proceeding with the case before M.A.C.S.-C. reached the age of eighteen or otherwise show a reason for doing so beyond the State's control, M.A.C.S.-C. cites in support: (1) the State delayed filing the case, (2) the State delayed requesting a trial date, (3) the State engaged in witness obstruction on his discovery and inspection motions, (4) the State filed a motion to recuse and failed to request a hearing, and (5) the State improperly filed its transfer petition and made an untimely request for a hearing on the petition.

#### 1. Delay in Filing

Turning to the delay in filing the case, the record shows on June 7, 2021—approximately one month after Gillespie County Attorney's Office received all the files in the case on May 5—Gillespie County Attorney Steven A. Wadsworth—counsel for the State here—brought the case before the grand jury for determinate sentencing consideration on June 28, 2021 at 11:30 a.m.[4] On June 28, Wadsworth appeared at the scheduled time to present the case to the grand jury, but Assistant District Attorney Melissa Warrick apologized and informed him the grand jury "left. I

---

[4] During the January 10, 2023 transfer hearing, the juvenile court took judicial notice of its file.

do not believe we added your case to the agenda." Jan Davis—the Gillespie County District Clerk—testified the grand jury met August 2, 2021. Rather than propose August 2, Wadsworth asked for the case to be added to the August 30 grand jury agenda. On that day, the grand jury approved the petition, and the State filed it the same day.

Taken together, these delays—from the time the Gillespie County Juvenile Probation Department referred the case to the County Attorney's Office to the time Wadsworth requested the case to be added to the grand jury agenda, followed by the time between June 28, 2021 and August 30, 2021 when the case was finally presented to the grand jury—resulted in ninety-six days before the case was presented to and approved by the grand jury. This delay—occurring fifteen months before M.A.C.S.-C.'s eighteenth birthday—is directly attributable to the State. And the State offered no evidence how it used due diligence under those circumstances or how the delay was beyond its control. *See, e.g.*, *J.C.W.G.*, 613 S.W.3d at 567–69; *C.C.C.*, 2022 WL 710143, at *13; *J.C.C.*, 952 S.W.2d 47, 49–50.

### 2. Witness Obstruction in Connection with M.A.C.S.-C. Discovery and Inspection Motions

M.A.C.S.-C. contends the State's unilateral instruction to two duly subpoenaed witnesses to not attend a March 7, 2022 hearing on his discovery motions resulted in his inability to question the witnesses at the hearing, preventing him from presenting sufficient testimony regarding the materiality, necessity, and least intrusive evidence retrieval methods. M.A.C.S.-C. argues the State's actions resulted in a significant delay because the State, after the juvenile court ruled against it, filed a mandamus petition in this court, which did not result in an opinion until August 31, 2022.

The record shows M.A.C.S.-C. filed the motions on March 3, 2023, and a hearing was scheduled for March 7, 2022. The complainant's mother testified at the transfer hearing she and the complainant's father were subpoenaed to attend the March 7 hearing but did not appear in

juvenile court because the prosecuting attorney—Wadsworth—told her he planned to file a motion to quash the subpoena.[5] She also testified Wadsworth informed them they should standby in case they had to testify during the hearing after all, but they were never contacted by Wadsworth to attend the hearing.

During the March 7 hearing, the State bench-filed a motion to quash the subpoena along with a response to M.A.C.S.-C.'s motions. The juvenile court also admonished the State that the next time the witnesses are served with subpoenas, "they need to have their fannies here . . . . [T]here's better ways to handling it without knowing any guidance of the Court than just not showing up." On March 22, 2022, the juvenile court held a status hearing, and the following day, it issued an order denying the State's motion to quash the subpoena, granting M.A.C.S.-C.'s inspection motion, and ordering the complainant's parents to appear at the next hearing. On March 30, 2022, the State filed a request for an emergency stay of the juvenile court order followed by a mandamus petition the next day. This court granted the stay on April 1, 2022, as to the portions of the order requiring the complainant's parents to appear.[6] On August 31, 2022, this court rendered its mandamus decision. *See In re State ex rel. Wadsworth*, 653 S.W.3d 759 (Tex. App.—San Antonio 2022, orig. proceeding).

Here, filing the motion was within the State's control, but the State filed the mandamus petition and emergency motion only one week after the juvenile court issued its March 23, 2022 order—eight months before M.A.C.S.-C.'s eighteenth birthday. Not within the State's control was the 152 days this court's decision on the mandamus petition was pending.[7] *See, e.g., J.C.W.G.*,

---

[5] The complainant's father testified at the transfer hearing he could not recall why he did not attend.

[6] This court's order also stayed the juvenile court's order for the complainant's parents to provide, for inspection, specific items in evidence in connection with the case.

[7] M.A.C.S.-C. also argues the State's actions violated his constitutional rights. Assuming for argument's sake the State violated M.A.C.S.-C.'s constitutional rights, M.A.C.S.-C. does not identify how such actions demonstrate the juvenile

613 S.W.3d at 568 ("The State is not responsible for court delays, which can be described as exceptional circumstances.").

M.A.C.S.-C. contends the State was also responsible for the additional delay consisting of the time between its motion for rehearing and en banc reconsideration of this court's August 31, 2022 opinion filed on September 2, 2022, and this court's decision denying the motions on October 28, 2022. However, we cannot attribute this court's delay in deciding the motions to the State. *See id.*

### 3. State's Motion to Recuse and Failure to Request a Hearing

M.A.C.S.-C. argues the State's filing of its motion to recuse caused a 195-day delay from the date the State filed it. He adds the State refused to participate in his efforts (and the juvenile court's) to have the motion heard, explaining the State failed to request a hearing on its motion or submit any proposed orders to the administrative judge for consideration and entry.[8] M.A.C.S.-C. further argues the delay in the juvenile court's hearing the motion was the State's attempt to stop any other proceeding in the case because, like the already-pending mandamus petition, the recusal motion was based on the already-stayed portions of the March 23, 2022 order.

The State filed its recusal motion on May 5, 2022. On June 2, 2022, the juvenile court referred it to the presiding judge in the Sixth Administrative Judicial Region, Judge Stephen B. Ables. Four days later, M.A.C.S.-C.'s counsel emailed a proposed order on the motion to court officials in the Sixth Administrative Judicial Region. A court official responded explaining Judge Ables would not render a decision on the recusal motion prior to this court's ruling on the

---

court abused its discretion in finding the State used due diligence in moving the case forward or for a reason beyond state control it was not practicable to proceed in juvenile court before M.A.C.S.-C.'s eighteenth birthday. *See* TEX. FAM. CODE §§ 51.0412, 54.02(j); *W.A.*, 2023 WL 5020627, at *5.

[8] M.A.C.S.-C. contends he requested a hearing on the motion no fewer than four times.

mandamus petition. On August 31, 2022 when this court issued its mandamus opinion, M.A.C.S.-C.'s counsel forwarded the opinion to court officials asking whether Judge Ables would then consider the recusal motion. The State responded, explaining it was considering a rehearing motion or seeking further review in a higher court.[9]

The State filed its rehearing motion on September 2, 2022. This court denied the motion on October 28, 2022. On that day, M.A.C.S.-C.'s counsel again contacted court officials asking Judge Ables to rule on the recusal motion, so M.A.C.S.-C.'s pending motions could be heard by Judge Nevins. Three days later, on October 31, the State indicated it intended to file a stay motion along with a mandamus petition with the Court of Criminal Appeals.

On November 7, 2022, the State notified M.A.C.S.-C.'s counsel and Sixth Administrative Judicial Region officials that the Supreme Court of Texas rejected its November 4 mandamus petition for, among other things, failure to pay the filing fee. The State explained that, after further review, it would no longer seek mandamus relief and would instead file a discretionary transfer petition to transfer the case to district court because M.A.C.S.-C. was turning eighteen at the end of the month.

Minutes later, M.A.C.S.-C.'s counsel asked Judge Ables to hear the recusal motion and rule on M.A.C.S.-C.'s other pending motions, and the State responded it had "no objections at all to moving forward." Later that same day, the State again emailed M.A.C.S.-C.'s counsel and Sixth Administrative Judicial Region officials, explaining the State had filed its petition for discretionary transfer with 216th District Court Judge Albert Pattillo—*not* Judge Nevins, who presided over the case. The State added if the transfer petition were granted, it would "moot the motion to recuse."

---

[9] The following day, the juvenile court forwarded a copy of its proposed amended order based on this court's opinion and asked the State to advise whether it intended to pursue the recusal motion.

One week later, M.A.C.S.-C.'s counsel again emailed Sixth Administrative Judicial Region officials explaining that notwithstanding the State's position, it is "absolutely necessary" Judge Ables rule on the motion or the State "withdraw[] [it]" so M.A.C.S.-C.'s motions could be heard. M.A.C.S.-C.'s counsel added she would be filing a "Motion to Set for Hearing on State's Motion to Recuse today." The State responded the same day, explaining it "has no objections to setting and hearing" the recusal motion but noted M.A.C.S.-C. "turns 18 in about two weeks." After M.A.C.S.-C. counsel forwarded a motion to set a hearing on the State's recusal motion, the hearing was set for two days later, on November 16, 2022. On November 21, 2022, Judge Ables denied the recusal motion; the clerk filed the order on M.A.C.S.-C.'s eighteenth birthday.

Here, the State's recusal motion did not result in delay while this court considered the State's mandamus petition and rehearing motion. *See, e.g.*, *J.C.W.G.*, 613 S.W.3d at 568. However, the State controlled the delays resulting from filing its failed mandamus petition, its refusal to withdraw the recusal motion or otherwise ask Judge Ables to set the recusal motion for a hearing, and its decision to pursue its transfer petition instead. The State's actions resulted in a delay of nineteen days and brought the case within two weeks of M.A.C.S.-C.'s eighteenth birthday.[10] The State produced no evidence demonstrating it used due diligence under those circumstances or how its actions were beyond its control. *See, e.g.*, *J.C.W.G.*, 613 S.W.3d at 567–69; *C.C.C.*, 2022 WL 710143, at *13; *J.C.C.*, 952 S.W.2d at 49–50.

---

[10] M.A.C.S.-C. also contends the State lacked due diligence because it prevented him from proceeding on his ex parte motions for expert witness. Assuming for argument's sake M.A.C.S.-C.'s contentions are true, M.A.C.S.-C. does not identify how such actions demonstrate the juvenile court abused its discretion in finding the State used due diligence in moving the case forward or for a reason beyond state control it was not practicable to proceed in juvenile court before M.A.C.S.-C.'s eighteenth birthday. *See* TEX. FAM. CODE §§ 51.0412, 54.02(j); *W.A.*, 2023 WL 5020627, at *5.

#### 4. Petition for Transfer Filing Error and Untimely Requesting a Hearing

M.A.C.S.-C. argues the State caused further delay resulting in M.A.C.S.-C. turning eighteen before his juvenile delinquency case was resolved when it confused the juvenile court by filing its transfer petition in a different cause when there was no legal basis to do so. M.A.C.S.-C. further argues if the State had properly filed the motion in the pending cause before this court and timely requested a hearing on the motion, the juvenile court could have timely heard the transfer petition. Instead, the State waited until November 16, 2022 to request a hearing on the motion and offered no reason for its delay.

The State filed its original petition for discretionary transfer to criminal court on November 7, 2022. Nine days after filing the transfer petition, the State contacted the juvenile court coordinator and stated the petition should be set for a hearing and asked whether the "judges [had] decided which court (CCL or 216th) will accept the filing and which judge will hear it?" After the court coordinator explained she was under the impression Judge Nevins was going to hear the transfer petition, the State, on November 17, 2022, replied Judge Nevins could "certainly hear the motion for transfer, but since the CCL and 216th have overlapping juvie jurisdiction, I think either of them can hear it." The court coordinator responded the same day explaining Judge Nevins would hear the motion and proposed the first possible date for the hearing in December 2022—the month after M.A.C.S.-C. turned eighteen years old. Judge Nevins ultimately heard argument in January 2023.

The State waited until November 16, 2022—nine days after filing the transfer petition and the same day as the recusal motion hearing—to request a hearing on the transfer petition. However, even if the State had requested a hearing the same day as it filed the transfer petition, the scheduling of the transfer petition for a hearing was not entirely within the State's control; the court coordinator scheduled hearings, and it depended on the juvenile court's and parties' availability.

*See J.C.W.G.*, 613 S.W.3d at 567–69 (State not responsible for exceptional circumstances like court delays); *see also L.M.B.*, 2017 WL 253654, at *2 (Tex. App.—Eastland Jan. 6, 2017, no pet.) (mem. op.) (concluding not practicable to proceed in juvenile court before eighteenth birthday considering, among other things, juvenile court's calendar and attorneys' calendars). And Judge Ables could have granted the recusal motion further delaying the scheduling of the transfer petition.

### 5. M.A.C.S.-C.'s Other Transfer Order Arguments

M.A.C.S.-C. argues the State failed to request a trial date. However, a review of the record shows the juvenile court set a jury trial for February 22, 2022—nine months prior to M.A.C.S.-C.'s eighteenth birthday. The juvenile court also set April 18, 2022 as a back-up trial date.

M.A.C.S.-C. contends the State's decision to file its transfer petition under a different cause number deprived M.A.C.S.-C. of his right to counsel. Assuming for argument's sake M.A.C.S.-C.'s contention is true, the record shows the State plainly informed M.A.C.S.-C.'s counsel of its action via email, and M.A.C.S.-C. does not identify how the State's action demonstrates the juvenile court abused its discretion in finding the State used due diligence in moving the case forward or for a reason beyond the State's control it was not practicable to proceed in juvenile court before M.A.C.S.-C.'s eighteenth birthday. *See* TEX. FAM. CODE §§ 51.0412, 54.02(j); *W.A.*, 2023 WL 5020627, at *5.

Finally, he argues the juvenile court abused its discretion in granting the transfer order because the juvenile court's findings did not cite any intervening obstacles impeding the State's ability to move the case forward. M.A.C.S.-C.'s argument is without merit. *See Ex parte Thomas*, 623 S.W.3d 370, 383 (Tex. Crim. App. 2021) ("A juvenile transfer order entered after the required transfer hearing and complying with the statutory requirements constitutes a valid waiver of

jurisdiction even if the transfer order does not contain factually-supported, case-specific findings.").[11]

Taken together and mindful that on the question of due diligence, we must defer to the juvenile court's findings unless the record contains no evidence to support them, the juvenile court's finding the State exercised due diligence in attempting to complete the proceeding before M.A.C.S.-C. turned eighteen years old are supported by the record. *See B.R.H.*, 426 S.W.3d at 168. And viewing the evidence in the light most favorable to the challenged finding and disregarding contrary evidence unless a reasonable factfinder could not reject it, the evidence is legally sufficient to support the juvenile court's finding that for a reason beyond the control of the State, it was not practicable to proceed in juvenile court before M.A.C.S.-C.'s eighteenth birthday. *See W.A.*, 2023 WL 5020627, at *5; *B.R.H.*, 426 S.W.3d at 168 ("Due diligence does not require the State to 'do everything perceivable and conceivable to avoid delay.'" (quoting *In re N.M.P.*, 969 S.W.2d 95, 100 (Tex. App.—Amarillo 1998, no pet.)).

Furthermore, considering all the evidence presented to determine whether the challenged finding conflicts with the great weight and preponderance of the evidence so as to be clearly wrong or unjust, we cannot conclude the evidence is factually insufficient. *W.A.*, 2023 WL 5020627, at *5. The State is responsible for the ninety-six-day delay in reviewing the case and presenting it to a grand jury for its consideration. However, the grand jury delay took place fifteen months before M.A.C.S.-C.'s eighteenth birthday. *See Moore*, 532 S.W.3d at 404 (providing § 54.02(j) "does not

---

[11] M.A.C.S.-C. also argues the juvenile court abused its discretion by granting the consolidation motion. However, the juvenile court order provides M.A.C.S.-C. did not object. *See* TEX. R. APP. P. 33.1.

Finally, M.A.C.S.-C. argues he was harmed by the juvenile court including findings in its transfer order under subsections (a) and (f) of Family Code 54.02, which were not necessary findings under subsection (j) of section 54.02. TEX. FAM. CODE § 54.02. However, M.A.C.S.-C. cites no authority supporting this proposition. *See* TEX. R. APP. P. 38.1(i). Even if M.A.C.S.-C. had, any such error is not reversible because the record shows it did not "probably cause[] the rendition of an improper judgment" and did not "probably prevent[] [M.A.C.S.-C.] from properly presenting the case" to this court. *See* TEX. R. APP. P. 44.1(a).

impose an arbitrary deadline for prosecutorial action"). The State is also responsible for a nineteen-day delay just a few weeks before M.A.C.S.-C.'s eighteenth birthday. However, the overwhelming source of delay in the case related to the time it took for this court to render a decision on the State's mandamus petition and an order on the State's rehearing motion. Those delays, occurring during the final eight months before M.A.C.S.-C.'s eighteenth birthday, totaled nearly seven months. *W.A.*, 2023 WL 5020627, at *5. ("A juvenile court does not abuse its discretion merely because it bases its decision on conflicting evidence."). And we cannot attribute those delays to the State. *See J.C.W.G.*, 613 S.W.3d at 568. Because we cannot conclude the evidence is legally and factually insufficient, we cannot conclude the juvenile court abused its discretion in waiving its jurisdiction and transferring the case. *See W.A.*, 2023 WL 5020627, at *5.

## CONCLUSION

The juvenile court's order is affirmed. *See* TEX. FAM. CODE § 56.01(i).

Luz Elena D. Chapa, Justice